DAVID G. HAMILTON

*v.*

THE SEMET SOLVAY COMPANY *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 18, 1907.*

1. INJUNCTION—*when equity will not enjoin alleged obstruction of street.* A court of equity will not enjoin an alleged obstruction of a street at the suit of a private person unless such obstruction works a special injury to the complainant.

2. SAME—*what obstruction of street does not work special injury.* The construction of a canal or slip, which crosses territory marked upon a plat as a street, works no special injury to a complainant in a bill for injunction who owns land in the same subdivision but about one-third of a mile from the slip, where the surrounding land is swampy and the street has never been marked out upon the ground nor used, and leads nowhere except to unplatted land owned by the defendants, and where the evidence shows that all the land, including that of the complainant, will be enhanced in value by the construction of the slip.

CARTWRIGHT and FARMER, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

This was a bill filed in the circuit court of Cook county by plaintiff in error against the Semet Solvay Company, the Albert Dickinson Company, and various individuals connected with said companies, praying that they be perpetually enjoined from completing a certain canal or slip, and that they be decreed to remove said slip from certain alleged public highways which it is claimed to obstruct and parts of which it is alleged to include. That court, after a hearing on the amended bill, answers and replications, dismissed the bill for want of equity. The case was then appealed to the Appellate Court, and by that court the appeal was dismissed on the ground that it involved a freehold. The case is now brought to this court.

It appears that a plat known as Allen's addition to South Chicago was recorded in 1869 on the records of Cook county. Considerable discussion is had in the briefs as to whether the streets and alleys included therein were dedicated according to the statute then in force or merely by common law dedication. The record of the plat was burned in the Chicago fire in 1871 and the original plat appears to have been mislaid. Evidence, both oral and documentary, including the testimony of James Allen, who made the subdivision, was introduced as to the contents of the plat and its accompanying certificates. Evidence was also introduced for and against the proposition that the streets in question have been legally vacated.

The land covered by the plat in question lies on the westerly side of the Calumet river, two or three miles from its mouth. The bill sets forth that the part of the subdivision practically corresponding to its north half is owned, except the parts dedicated to public use, by persons holding in behalf of the Semet Solvay Company and of the Albert Dickinson Company, the former company's portion lying south

of the center of the slip in question and the latter company's portion lying north. The bill further alleges that plaintiff in error is the owner of that portion of the plat substantially corresponding to the south half of the south half thereof, excepting the parts dedicated to public use. Plaintiff in error's land is a little less than one-third of a mile from the slip complained of. It appears from the testimony that practically all of the land along the Calumet river is used for plants requiring considerable ground,—from five acres up to two hundred acres,—manufacturing concerns, coal yards, elevators, salt and chemical works, blast furnaces and coke plants. The land platted as Allen's addition appears to have been originally very low,—practically a swamp,—and is still in that condition except where raised by artificial filling. Several witnesses testified that it is covered with mud or water during many seasons of the year, requiring a person to wear high rubber boots to pass over it, and that the land is grown with marsh plants or reeds. One witness testified that he had crossed the land on the ice the winter before the trial and that the reeds stood as high as a man's head. While a number of streets were laid out on paper in this subdivision, none of them appear ever to have been graded or used or put in condition so that they could be used as streets, or in any way distinguished from the surrounding territory, excepting Center avenue, or One Hundred and Twelfth street, which has apparently been raised by some of defendants in error, very recently, high enough for use, running west to Torrence avenue. This street is not included in or obstructed by the slip in question, lying between it and plaintiff in error's land. About a half a mile to the west of the river Torrence avenue runs north and south and is evidently a street of some importance. It is not obstructed by the slip or included in Allen's subdivision. Between Torrence avenue and the river, at the point in question, there appear to be only two or three scattered houses.

The Semet Solvay Company is a large concern engaged in the manufacture of coke and its by-products, such as coal tar and ammonia. Its main plant lies to the west of Torrence avenue, on a tract of some one hundred and sixty acres, about half a mile from the river. It had at the time in question some one hundred and twenty coke ovens, and testimony was offered that it had already paid out in wages and for material a million and a half dollars. Between the land of this company and that of the Albert Dickinson Company to the north has been constructed a slip or canal running west from the river, about twelve hundred feet long, one hundred and seventy-five feet wide and twenty-one feet deep in the center. It appears to have cost each company about $75,000. This slip is used by the Solvay company for the unloading of coke, which is then transported by a sub-way to its plant on the west of Torrence avenue. Testimony was offered that the existence of this slip is necessary for the receipt of its material by lake transportation. The record does not fully set out as to the Albert Dickinson Company's use of the slip. The survey locating the slip was made in February, 1905. The contract was let and permission to construct obtained from the public works department in the early part of March of that year. By May 3, when this bill for injunction was filed, considerable of the dredging had been done and two pile-drivers were working. The slip has since been finished. It appears that between April 1 and 7, 1905, one of the attorneys for plaintiff in error notified the representatives of the Semet Solvay Company that Hamilton would contest their right to close said land claimed to be streets. The slip takes in some of the land which was included in the land shown on Allen's subdivision as streets. As has been said, these streets have never been graded or apparently marked off in any way on the ground itself, among the rushes and reeds, from the land which was not shown as streets. Without considerable filling they could not be actually used for highways. It

appears that the land to the north and west of that part of the subdivision in which they were located is owned by or on behalf of the two companies in question. None of the streets included within or obstructed by the slip lead any place except to unplatted land owned by or for said companies or to the river in front of their land. It was stipulated by counsel that the defendants Dickinson and Boyle had prior to July 1, 1902, enclosed by a fence all of Allen's addition north of One Hundred and Twelfth street.

In order to make more clear the situation and surroundings of the land and slip in question the following plat has been compiled from one of the plats shown in the record:

To prevent confusion, no attempt has been made to give the details and all divisions of blocks into lots, and all alleys

(except the one which is intersected by the slip) have been omitted. The division into the various tracts, as to ownership, is merely approximate, and the question of the ownership of the parts marked as streets and alleys has not been taken into consideration in designating said tracts on the plat. The platted portion to the right is Allen's subdivision, that to the left is Kleinman's subdivision. The space between the two, so far as appears from the record, is unplatted.

WILLIAM GIBSON, and F. W. BECKER, for plaintiff in error.

JAMES S. MURRAY, and WINSTON, PAYNE & STRAWN, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error in his bill alleges that the proposed occupancy of certain streets of the plat in question by the defendants in error would cause him irreparable injury by reducing the value of his land and cutting off the use of said streets so occupied. This allegation was denied in the answers, defendants in error contending that he would not be injured by the construction of said slip, and that the claim of damages was not made in good faith but to force them to purchase his property. No proof was offered by plaintiff in error to sustain his allegations as to such injury except a copy of the original plat showing the location of the streets thereon. Defendants in error introduced evidence showing that this property could only be used in large acre-tracts, and that the location and continuous retention of streets on the land as originally platted in 1869 would greatly lessen the value of their land; that it would be worth practically nothing with the streets, and would be worth something over $6500 per acre, unimproved, if the

streets were vacated. This evidence stands uncontroverted in the record. The changes in connection with this property since it was platted, in 1869, have been most marked. Since that date, between it and the mouth of the Calumet river, two or three miles northerly, many of the finest manufacturing plants in existence have been located and are now occupying practically all the land on both sides of the river down to the property of defendants in error. Nine large slips, some nearly a quarter of a mile in length, from one hundred to one hundred and fifty feet in width, with a depth of over twenty feet, have been constructed in connection with these plants. The Calumet river, originally, for much of the distance was nothing but a shallow, muddy creek, with almost unapproachable, marshy banks. It has been enlarged and deepened by dredging and railroads have been built into this point, so that now this section has as fine railroad and water connections, for freight purposes, as can be found. Until the development of this property along the Calumet river for these purposes it was practically valueless, many of the lots in Allen's addition having been sold for taxes. Indeed, the proof shows that plaintiff in error holds some sixty of his lots by tax and limitation titles, being purchased for a mere trifle.

To justify a court of equity in granting the relief asked for in these proceedings, plaintiff in error must establish a special injury to himself, actual and substantial. This court held in *McDonald* v. *English*, 85 Ill. 232, that the rule was well settled that for any obstruction to streets not resulting in special injury to the individual the public, only, can complain. While the obstruction or injury might be of a public nature, still the individual might be specially injured thereby, but in such case, to justify the individual in maintaining an action to recover, the special injury must be the gist of the action and alleged and proved.

*City of Chicago* v. *Union Building Ass.* 102 Ill. 379, has many points similar to the cause now being considered.

Some of the ablest counsel then at this bar took part in the argument of that case. In the decision written by Mr. Justice Scholfield it was stated (p. 391) : "We are of opinion that appellee has shown no such special or peculiar injury to its property as entitles it to an injunction, even if it be conceded that the proposed vacation and closing up of a part of LaSalle street is illegal. Appellee's building and lot are some three and a half blocks distant from the part of LaSalle street proposed to be vacated and closed up. It is not, nor could it reasonably be, claimed that the closing up of this portion of the street in any degree interferes with access to appellee's lot, or with its use and enjoyment. The streets adjacent to it all remain in the same condition as to width, character of improvements, etc., that they were in before, and it is not pointed out how the appellee will be otherwise specially or peculiarly injured by the proposed closing up of the portion of the street in question." So in this case. The court there held that for any act obstructing a public and common right no private action will lie for damages; that the damages are of the same kind as those sustained by the general public, although such damages may be to a much greater degree to the complainant than to other persons.

In *Littler* v. *City of Lincoln,* 106 Ill. 353, we said (p. 367) : "The rights or privileges of other proprietors in the plat, which the statute protects, are necessarily legal rights and privileges, and such parties cannot, therefore, be affected by the closing of streets not adjacent to their property nor directly affording access thereto and egress therefrom."

In *City of East St. Louis* v. *O'Flynn,* 119 Ill. 200, it was held that where the plaintiff's lot was not adjacent to certain streets and alleys vacated, but in another block, and the access to and egress from said lot were not affected by the vacating ordinance, no recovery could be had from the city for vacating such adjacent streets.

In *Parker* v. *Catholic Bishop,* 146 Ill. 158, after quoting with approval the three cases just cited and other authorities, this court held that a party, to maintain an action at law or in equity for the improper vacation of a street or alley, must show that he received special injury or damages differing in kind from those affecting the general public.

The conclusion reached in *City of Chicago* v. *Union Building Ass. supra,* on the point here under consideration, has been referred to many times by this court with approval. The following are a few among the many cases: *Guttery* v. *Glenn,* 201 Ill. 275; *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605; *Snell* v. *Buresh,* 123 id. 151; *Oswald* v. *Wolf,* 129 id. 200; *Springer* v. *Walters,* 139 id. 419; *Saunders* v. *City of Chicago,* 212 id. 206; *Dunn* v. *Youmans,* 224 id. 34.

The decisions of this court in *Newell* v. *Sass,* 142 Ill. 104, *McDonald* v. *Stark,* 176 id. 456, and *Village of Riverside* v. *MacLain,* 210 id. 308, relied upon by the plaintiff in error, in no way conflict with the rule that a court of equity will not interpose' to prevent the obstruction of a public street at the instance of a private individual unless such obstruction works a special injury to the individual complainant. In all these cases the injury was alleged and proven. In the last case there was the additional reason stated for the court taking jurisdiction, that a bill could be maintained by an individual for the purpose of enforcing a special trust resting upon public officials in favor of adjoining property owners.

The streets on the so-called Allen addition have never been improved or used in any way, with the one exception heretofore noted in the statement. There is nothing on the ground to indicate that any such streets were ever in existence. The land, up to the time these improvements were put in, was, in its natural state, low and marshy and much of the year under water. That seems to be the present condition of the property of plaintiff in error. A substantial

part of some of the lots, as shown on the copy of the original Allen plat, have become a part of the river by the ground being excavated for the purpose of widening and deepening the channel. All of the adjoining territory immediately adjacent to said Allen addition is unsubdivided. The record shows that plaintiff in error himself once attempted to vacate the streets on his part of the subdivision. From the evidence it appears that the property in that vicinity, including that claimed by plaintiff in error, will be materially enhanced in value by the completion of the slip and the carrying on of the business of defendants in error. This record is absolutely barren of any evidence tending to show that plaintiff in error has suffered any special or peculiar injury, or that his property has been or will be in any way damaged by the construction or continuance of the slip in and across the alleged streets in question. On the proof before us he has not shown any injury to his property, and certainly not such special or peculiar injury as entitles him to the relief prayed for in his bill, even conceding that the vacation of said streets be illegal.

Plaintiff in error having failed to show any ground that would justify a court of equity in retaining jurisdiction, we deem it unnecessary to discuss the question as to whether the vacation of the streets in question was in accordance with law and whether defendants in error own the fee to said streets.

Finding no reversible error in the record the decree of the circuit court will be affirmed.     *Decree affirmed.*

CARTWRIGHT and FARMER, JJ., dissenting.