## William B. Bockenfeld, Appellant, v. City of Quincy et al., Appellees.

### Gen. No. 7,622.

1. MUNICIPAL CORPORATIONS—*injury to complainant as gist of taxpayer's suit.* Allegations that complainant is a "resident, voter and taxpayer" of the defendant city, in a bill to perpetually enjoin a city operating a municipally owned water system from charging more than enough for water service to produce revenue sufficient to meet maintenance and operation costs, pay interest charged on bonds and certificates and provide a sinking fund to pay such bonds and certificates at maturity, do not show any such special interest in or injury to complainant as entitled him to maintain the bill, where there is no allegation of any increase in taxes or of any direct or indirect pecuniary injury to complainant.

2. MUNICIPAL CORPORATIONS—*sufficiency of allegation of interest to support taxpayer's bill.* An allegation that complainant taxpayer is a "consumer of water from the municipal plant" is insufficient to give complainant any standing to maintain a taxpayer's bill to perpetually enjoin a city which owns and operates its own water system from charging more than enough for service to meet all fixed charges and retire outstanding bonds and certificates issued on account of the system, where it is not alleged that complainant is purchasing any water from the city or being charged unreasonable rates, it appearing that there are approximately forty thousand water consumers in the city and only about one-tenth that number of actual purchasers, especially where the bill alleges that the plant is being operated at a profit and that the profit goes to pay the general expenses of the city, thereby reducing taxes.

3. MUNICIPAL CORPORATIONS—*limitation of rates for service by municipally owned utility.* The provisions of the Municipal Ownership Act, secs. 12, 13 (Cahill's Ill. St. ch. 111a, ¶¶ 12, 13), that charges for service rendered by a public utility operated by a city shall be high enough to produce a revenue sufficient to meet all fixed charges and provide a sinking fund sufficient to retire all

outstanding bonds and certificates at maturity, and for the keeping of separate accounts for such utilities, do not provide a maximum rate, in view of the provisions of the Act of 1873, sec. 32, Cahill's Ill. St. ch. 24, ¶ 1062, et seq., relating to municipally operated waterworks and providing for the application of income therefrom, and of the Act of 1899 (Cahill's Ill. St. ch. 24, ¶¶ 1088, 1089), providing for the fixing of rates by the city council, but require the city to furnish water at reasonable rates, subject to the reviewing power of the courts as to their reasonableness.

4. MUNICIPAL CORPORATIONS—*sufficiency of allegations of taxpayer's bill to limit rates of municipally owned waterworks.* A taxpayer's bill to perpetually enjoin a city from charging more than enough for water from a municipally owned system to meet all fixed charges and provide a sinking fund to retire outstanding bonds and certificates was properly dismissed for want of equity where it contained no allegation as to the reasonableness of the rates charged or as to the amount of an alleged "profit" applied to the general expenses of the city.

Appeal by plaintiff from the Circuit Court of Adams county; the Hon. FRED G. WOLFE, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed January 10, 1924.

JOHN F. GARNER, for appellant.

C. H. WOOD, Corporation Counsel, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellant filed his bill in equity against appellee, the City of Quincy, and its waterworks commissioners, praying that they be perpetually enjoined from charging for water service more than enough to produce a revenue sufficient to bear all costs of maintenance and operation of its water plant and to meet interest charges on bonds and certificates issued on account thereof, and to provide a surplus or sinking fund sufficient to meet outstanding bonds or certificates at maturity issued on account of said waterworks. Appellees demurred to the bill. The court sustained the demurrer and appellant electing to stand by his bill, it was dismissed for want of equity.

The bill alleges that the appellant "is an actual resident, voter and taxpayer of the City of Quincy and a consumer of water from the municipal plant of the city." The bill further shows that the City of Quincy is a municipal corporation, its population, and generally a description of the waterworks system, its acquirement by the city, its method of taking water from the Mississippi river, the purification of the same, and its distribution to the people of said city, factories and institutions and its distribution to consumers, factories and institutions outside of the city, although it is alleged that the major portion of said distribution is within the City of Quincy. Under the allegations of the bill, it appears that said waterworks system was formerly owned by a private corporation, which had operated the same at a profit, and that said appellee, the City of Quincy, had purchased and taken over said system a good many years ago, and had since operated the plant, not in any manner lessening the rates for service, so that, at this time, all bonds and certificates of indebtedness incurred by the purchase of said plant and its extension had been fully paid, and that upon the charges made for service, the appellee city had so conducted the plant that, out of earnings, all costs of operation, maintenance and repairs had been paid, and that the city had received and was receiving its entire water service for hydrants, public buildings, parks and public institutions free of cost, and in addition, the bill alleges, that during 1922 the city "has received profits, to wit, one hundred thousand dollars," and it is averred that such profits are being appropriated by appellee, city, to the payment of its general expenses of city government. The bill sets out a rate and schedule of charges for water to the inhabitants and institutions of said territory, but it is not averred that such rates are excessive or unreasonable, but generally it is alleged that such rates produce the profit set out in the bill. It appears that the water mains and ser-

vice from appellees' plant extend about one mile be-
yond the corporate limits of appellee city (except into
Mississippi river), and that such territory is served
from said plant by appellees. The bill does not set
out any facts or figures from which the value or cost
of said plant may be determined. It is not averred or
anywhere, in said bill, set out, the cost or expense of
operating the plant or the cost of repairs or improve-
ments, and there are no allegations in said bill from
which can be determined or even imagined, either
the cost of operation or maintenance, or the sufficiency
of a sinking fund for this plant, and nothing is inti-
mated as to the amount of water sold or the revenue
derived therefrom. All allegations in the bill, there-
fore, that the appellee city is receiving certain service
free, and in addition is receiving a further profit
stated as to amount, under a *videlicet,* is a pure con-
clusion as to the profit, and does not raise an issue as
to any such profit, under the allegations in the bill.

Appellees contend that complainant, appellant, un-
der the allegations of his bill, that he is a resident
voter and taxpayer in said city, has no such special
interest in the subject-matter of this suit that entitles
him to present this bill.

It has been generally held, unless otherwise pro-
vided by statute, that a taxpayer cannot sue to enjoin
an illegal or unauthorized act on the part of the mu-
nicipality, unless such act will result in an increase of
his taxes or will otherwise result in direct or indirect
pecuniary injury to him. The special interest of the
complainant is the very gist of the case and is neces-
sary to give the court jurisdiction. *Kerfoot v. People,*
51 Ill. App. 409; *City of Chicago v. Union Building
Ass'n,* 102 Ill. 379; *McDonald v. English,* 85 Ill. 236;
*Joseph v. Wieland Dairy Co.,* 297 Ill. 574; *Hamilton v.
Semet Solvay Co.,* 227 Ill. 501.

Neither is appellant aided by the averment that he
is a "consumer of water from the municipal plant."
The consumers, it being suggested, constitute sub-

stantially the entire forty thousand inhabitants of said territory, while the actual customers are not more than one-tenth of that number. Appellant does not aver or claim that he is purchasing any water from said city or being charged unreasonable rates. In fact, under the allegations of the bill, appellant is profiting from the water service funds, by having them appropriated to the general expense of said city, thereby reducing the taxes paid by appellant. Appellant presents the question in this case, quoting section 107 of chapter 111⅔, Smith's Rev. St. [Cahill's Ill. St. ch. 111a, ¶ 12], which reads as follows:

"The charges fixed for the service rendered by it, by means of any such public utility by any city, shall be high enough to produce a revenue sufficient to bear all cost of maintenance and operation and to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund that shall be sufficient to meet all outstanding bonds or certificates at maturity."

And section 108 of the same chapter [Cahill's Ill. St. ch. 111a, ¶ 13], which requires cities, operating public utilities, to keep the accounts of such utilities separate and apart from their general accounts, further provides: "If water or other service shall be furnished for the use of such public utility without charge, the accounts shall show, as nearly as possible, the value of such service, and also the value of such similar service rendered by the public utility to any other city department without charge," etc.

As to what constitutes a reasonable charge for such service, appellant insists that the city, in such cases, can only charge the inhabitants and patrons such rates as will produce a sum (in the case of each utility) sufficient to bear all cost of maintenance and operation and to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund that shall be sufficient to meet all outstanding bonds or certifi-

cates at maturity, and that any additional rate or charge is unreasonable, illegal and void.

The power to fix rates for municipally owned utilities does not lie in the Illinois Commerce Commission, but is reserved to the State. *Springfield Gas & Elec. Co. v. City of Springfield,* 292 Ill. 254.

Appellant quotes language in the opinion in *Springfield Gas & Elec. Co. v. City of Springfield, supra,* seeming to state that municipalities cannot fix rates in excess of section 107 of the Utilities Act, and in the same language the court say (p. 247):

"Municipalities under the Municipal Ownership Act are limited in rates and charges for the product furnished by their public utilities, and cannot operate them at a profit to the same extent as can private corporations, associations or persons owning like utilities," and in the same case, page 250, the court held that no part of the Municipal Ownership Act was repealed by implication by the provisions of the Utilities Act. The sections cited by appellant are a part of the Utilities Act and appellant contends that section 107, *supra,* is intended to provide for a maximum rate. Section 109 of the same Act [Cahill's Ill. St. ch. 111a, ¶ 14] provides that: "This Act shall be deemed and construed to confer powers in addition to but not limiting those now existing."

In *Springfield Gas & Elec. Co. v. City of Springfield, supra,* it was held by the majority opinion that the regulation of rates in municipally owned plants did not come under the control of the Illinois Commerce Commission. This conclusion was arrived at from a literal interpretation and reading of the language of section 10 in the Utilities Act [Cahill's Ill. St. ch. 111a, ¶ 25], effecting a different classification of municipally owned plants furnishing service to private consumers from similar plants operated by private persons, or corporations performing the same service and holding, for the reasons cited in the opinion, that such classification did not violate section 22 of article 4 of the Constitution. The court merely held that the

classification, as established by the legislature, was not unconstitutional and that there were grounds for the classification.   The former decisions of the Supreme Court in that case were not overturned, as contended by appellant.

In *Wagner v. City of Rock Island,* 146 Ill. 139, it was held in 1893 that: "A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a private corporation and not in the exercise of its powers of local sovereignty.   If this power is granted to a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good."

This doctrine was affirmed in *City of Chicago v. Town of Cicero,* 210 Ill. 297; *Illinois Glass Co. v. Chicago Tel. Co.,* 234 Ill. 544.   In the latter case it was said: "They were applied to a common carrier, and to the city occupying the same position as a public service corporation in supplying water to the inhabitants of the city,—a public service performed by the city in the exercise of a private and not a governmental function."

It was further held in *Wagner v. City of Rock Island, supra:* "In separating the two powers—public and private—regard must be had to the object of the legislature in conferring them.   If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character; but if the grant is for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc,* is to be regarded as a private company."

This doctrine also has been upheld in *City of Joliet v. Alexander,* 194 Ill. 465, and *Village of Palestine v. Siler,* 225 Ill. 637.

Section 32 of an Act authorizing cities to establish and operate waterworks, passed in 1873 [Cahill's Ill. St. ch. 24, ¶ 1067], provided as follows:

"All the income received by the city from the water·

works, from payment and collection of water taxes, rents or rates shall be kept in a separate fund and shall first be applied in the payment and discharge of the cost, interest on bonds or money borrowed and used in the erection and construction of such waterworks and running expenses thereof. And any surplus may be applied in such manner as the common council or board of trustees may direct."

A further act was passed in 1899, which provides for the fixing of rates by the city council and that the proceeds arising from the operation of the waterworks shall be kept inviolate in the water fund until the certificates issued in pursuance of said act, and the interest thereon, are fully paid. (Sections 441 and 442, ch. 24, Smith's Rev. St., Cahill's Ill. St. ch. 24, ¶¶ 1088, 1089.)

This provision is in no manner contrary to the provisions of section 32 of the Act of 1873, *supra*. The provisions, quoted by appellant, as part of the Utility Act, and of a similar nature, do not fix a maximum rate and the act specially provides that such provisions shall not repeal, by implication, any former acts. There is no doubt but that the City of Quincy, appellee, in furnishing water to its inhabitants and others, under the law, is required to furnish the same at a reasonable rate and that such rates as may be established are subject to review by the courts.

There is no rate or charge of appellee, in the bill of complaint in this case set out, with sufficient facts and data, requiring the court to make a determination as to whether it is reasonable or unreasonable, and from the facts alleged that the earnings of the waterworks plant have been sufficient to meet all the requirements of section 107 of the Utility Act, in addition to furnishing water for the city hydrants and other public institutions of the City of Quincy free, and that some additional proceeds, the exact amount thereof being unknown to the complainant, have been turned over to the city treasury as "profit" and otherwise used

and expended by the City Council of Quincy, is not, in the opinion of this court, under the allegations of said bill, sufficient to authorize a hearing upon the bill.

The Circuit Court of Adams county committed no error in sustaining the demurrer to the bill and dismissing the same for want of equity, and the judgment of the lower court is affirmed.

*Affirmed.*