(No. 47075

S. BLOOM, INC., *et al.,* Appellants, v. GEORGE E. MAHIN, Director of Revenue, *et al.,* Appellees.

*Opinion filed June 2, 1975.*

Cohon, Raizes & Regal, of Chicago (Maurice P. Raizes and Elliott D. Hartstein, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, S. Bloom, Inc., Midway Tobacco Co., Inc., and A. R. Patrick Wholesale, Inc., filed this declaratory judgment action against defendants, George E. Mahin as Director of Revenue of the State of Illinois, Alan J. Dixon as Treasurer of the State of Illinois and William J. Scott as Attorney General of the State of Illinois, alleging that the regressive graduated discount established by section 2(b) of the Illinois Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 453.2(b)) violates various provisions of the Illinois and United States constitutions. Following a hearing on the merits, the circuit court of Cook County ruled that section 2(b) is constitutional and ordered that plaintiffs' cause of action be dismissed. Direct appeal to this court was then allowed by us under our Rule 302(b). 50 Ill.2d R. 302(b).

As wholesale distributors of cigarettes in this State, plaintiffs are required to collect the tax imposed upon cigarette retailers by the Cigarette Tax Act. (Ill. Rev. Stat. 1973, ch. 120, par. 453.2(a).) Prior to their sale of cigarettes to retailers, distributors purchase from the State revenue stamps evidencing the payment of the tax, affix these stamps to each package of cigarettes sold, and add the amount of the tax to the price of the cigarettes. The

Act had originally imposed the tax directly upon the distributor and allowed each distributor a flat 5% discount on the amount of the tax paid to the State. Amendments in 1963 and 1965, while shifting the incidence of the tax to the retailer, continued to allow distributors a discount on their purchase of revenue stamps, but replaced the flat 5% discount with a regressive graduated discount, the basic structure of which has remained unchanged, although subsequent amendments of section 2(b) have significantly lowered the discount rate in each of the four brackets. Since the 1967 amendment, the actual discount in dollars has amounted to $1.20 per case for the first $700,000 in stamps purchased each year, $.96 per case for the next $700,000, $.72 per case for the next $700,000 and $.48 per case for all additional stamps purchased during that year. First expressed in the 1965 amendment, the legislative purpose in allowing the discount is to "cover the costs of *** collection" of the tax. Ill. Rev. Stat. 1965, ch. 120, par. 453.2(b).

Plaintiffs' large volumes of business place them in the lowest discount bracket shortly after July 1 each year, so that they receive a discount of $.48 per case thereafter. They allege that even the highest discount of $1.20 per case is not sufficient to cover the actual cost of collecting the tax, and that collection costs, rather than decreasing with volume as does the discount, increase as volume increases with the result that the difference between the cost of collection and the discount widens as the discount rate decreases. They therefore contend that the regressive feature of the discount does not correlate with the actual cost of stamping larger volumes of cigarettes and allows an unfair advantage to their smaller competitors who receive $1.20, $.96 or $.72 per case for most or all of the year, while plaintiffs are receiving $.48 per case for almost the entire year. For these reasons, the 1963, 1965, 1967 and 1968 amendments to section 2(b) are alleged to be arbitrary, discriminatory and unreasonable, in violation of

section 22 of article IV of the Illinois Constitution of 1870, prohibiting the passage of special laws "Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever"; section 2 of article II, the due process clause of the Illinois Constitution of 1870; section 2 of article I, the due process and equal protection clause of the Illinois Constitution of 1970; section 2 of article IX of the Illinois Constitution of 1970, placing certain restrictions on nonproperty tax laws; and the due process and equal protection clauses of the fourteenth amendment of the United States Constitution. In addition to a declaration that the amendments are unconstitutional, plaintiffs request that section 2(b) of the Act, as approved April 14, 1961, which allowed a flat 5% discount, be declared in full force and effect and that defendants be permanently enjoined from enforcing the amendments. They further request a refund from the State of funds paid by them under protest which were in excess of the sums which would have been due under the flat 5% discount. Relief is requested only for years subsequent to 1968, for the reason that during the years from 1963 through 1968 larger distributors were allowed to purchase multiple licenses, enabling them to remain in the highest discount bracket throughout the year.

The constitutionality of the regressive graduated discount was previously considered by this court in *Heyman v. Mahin* (1971), 49 Ill.2d 284. We there upheld its validity against contentions that the classifications were arbitrary or capricious and violated the equal protection clause of the fourteenth amendment to the Federal Constitution, the uniformity requirement of section 1 of article IX, and the special legislation prohibition of section 22 of article IV of our 1870 constitution. We further indicated that the presumption of constitutionality of the regressive discount was buttressed by the apparent legislative reliance upon the economic theory stated by Mr.

Justice Cardozo in his dissenting opinion in *Stewart Dry Goods Co. v. Lewis,* 294 U.S. 550, 567, 79 L. Ed. 1054, 1063, 55 S. Ct. 525:

> "Economically, the theory is that there is a minimum of size for business units below which efficiency is less on the average than expansion would tend to make it; that there are intermediate levels within which efficiency is subject on the average to progressive development; and that there is an ultimate level beyond which efficiency, even if promoted, goes forward more slowly and at a diminishing ratio."

We accordingly there concluded that the allegations of the complaint admitted by the motion to dismiss were insufficient to overcome the presumption of constitutionality of section 2(b).

Plaintiffs assert that *Heyman* is not controlling in the present case for several reasons: (1) the legislature intended reimbursement for all collection costs; (2) the evidence presented by plaintiffs in the trial court overcomes the weakness of the allegations in *Heyman* by establishing that the discount does not cover costs of collection and that costs do not decrease with increased collections of the tax—hence, the discount is proved to be arbitrary and discriminatory and violates the State and Federal constitutional provisions earlier indicated; (3) the graduated discount violates section 2 of article IX of the Illinois Constitution of 1970, the effect of which was not considered in *Heyman.*

*Heyman* came before us on the pleadings and we had no occasion there to consider the question whether the provision in section 2(b) that "The distributor shall be required to collect the taxes provided under paragraph (a) hereof, and, to cover the costs of such collection, shall be allowed a discount ***" evinced an unqualified legislative intent to reimburse a distributor for *all* collection costs.

It is relevant in such consideration to examine the cost

of collection reimbursements provided by other Illinois taxing statutes. It is at once apparent that the General Assembly has not always thought it either necessary or desirable to provide full, or even any, reimbursement for the costs of collection to those upon whom the burden of collecting taxes has been placed. The Illinois Income Tax Act requires employers to withhold income taxes from their employees' wages and to remit such taxes to the Department of Revenue. (Ill. Rev. Stat. 1973, ch. 120, pars. 7—701 through 7—707.) No compensation therefor is provided the employer. We upheld this aspect of the Act against the contention that the imposition upon employers of substantial costs without providing a means of reimbursement constituted a denial of due process and a taking of private property for public use without just compensation. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill.2d 323.) The Motor Fuel Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 417 *et seq.*) requires collection of the tax upon the user by the distributor (pars. 422, 422a) and allows deduction by the latter of the "actual cost [of collection], not to exceed 2% of the amount so collected." The Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.1 *et seq.*) imposing a tax upon the user of personal property purchased from a retailer provides (par. 439.9) the retailer collecting the tax a discount of the greater of 2% or $5 per calendar year "to reimburse the retailer for expenses incurred in collecting the tax ***." Other acts require returns to be filed and the tax paid by the taxpayer even though, as a matter of practice, the tax is passed on by adding it to the selling price. Of these, the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*) provides (par. 442) the retailer with a discount of the larger of 2% or $5 per calendar year for the same purposes as the Use Tax Act. Others, such as the Hotel Operators' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 481b.31 *et seq.*) and Public Utilities Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 468 *et seq.*) provide no

discount or reimbursement.

It seems to us clear that the taxing statutes of this State evidence no legislative intent supportive of plaintiff's contention that use of the language "to cover the costs of \*\*\* collection" in section 2(b) of the Cigarette Tax Act was intended to cover *all* costs of collection. We find no substantial difference between the phraseology and the "to reimburse the retailer for expenses incurred in collecting the tax" purpose stated in the Use Tax Act and the Retailers' Occupation Tax Act. In both of those acts, as in section 2(b), specific limits were placed upon the rate of discount or maximum deductions. Had the legislature intended in 2(b) to cover all collection costs, it seems clear that a system would have been devised which would require accurate recording and reporting of costs with reimbursement for only actual costs. "[T]he legislature is not required to grant any compensation for collecting the taxes. It [follows] that partial compensation for the costs of collecting the taxes [is] not \*\*\* objectionable." 49 Ill.2d 284, 291.

Since *Heyman* was decided on the basis of the pleadings, we did not have occasion to consider the effect of the classification created by section 2(b) in the context of the equal protection and due process challenges made here. The presumption of constitutionality must, of course, be overcome by one assailing the statute on constitutional grounds. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) The traditional equal protection test utilized by both Federal and State courts allows differentiation between similarly situated persons if the classification bears a rational relationship to a legitimate legislative purpose. (*McGowan v. Maryland* (1961), 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101; *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461; *People ex rel. City of Salem v. McMackin* (1972), 53 Ill.2d 347; *Fiorito v. Jones* (1968), 39 Ill.2d

531.) The Illinois Constitution of 1870 contained no equal protection clause, but similar standards are applied to determine violations of the special legislation provision in section 22 of article IV of that constitution. (*Bridgewater v. Hotz* (1972), 51 Ill.2d 103; *Schuman v. Chicago Transit Authority* (1950), 407 Ill. 313.) There is in this statute no differentiation between similarly situated persons. It affords exactly the same treatment to all distributors of cigarettes in this State. Each receives a discount of $1.20 per case on the first $700,000 of revenue stamps purchased, $.96 per case on the next $700,000, $.72 per case on the next $700,000 and $.48 per case on all additional stamps. An equal protection or special legislation issue simply has no merit if the statute's classification of persons does not result in different treatment for those similarly situated.

Nor do we find any due process problem here, for if a law bears a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory, the requirements of due process are met and the courts will not substitute their judgment for that of the legislature. (*Ferguson v. Skrupa* (1963), 372 U.S. 726, 10 L. Ed. 2d 93, 83 S. Ct. 1028; *Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505; *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill.2d 530; *People ex rel. Doty v. Connell* (1956), 9 Ill.2d 390.) The raising of revenue is a proper legislative purpose, and we believe the manner in which that purpose is achieved here is neither arbitrary nor discriminatory.

Plaintiffs' final argument relates to section 2 of article IX of the Illinois Constitution of 1970, which reads as follows:

> "Sec. 2. NON-PROPERTY TAXES—CLASSIFICA-
> TION, EXEMPTIONS, DEDUCTIONS, ALLOWANCES
> AND CREDITS
>
> In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable

and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable."

They urge that this provision is applicable because the graduated discount is encompassed within the meaning of the term "other allowances." We need not here determine whether the regressive graduated discount provided the distributor by section 2(b) is within the meaning of the term "other allowances" for, in any event, we think it reasonable. As earlier indicated, the legislature was under no compulsion to provide reimbursement for all collection costs, section 2(b) in our opinion does not indicate an intention to do so, and it affords the same treatment to all cigarette distributors.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*