AUSTIN VIEW CIVIC ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF PALOS HEIGHTS, Defendant-Appellee.

First District (4th Division)   No. 79-532

Opinion filed May 22, 1980.—Rehearing denied June 19, 1980.

90

Joseph J. Kozlowski and John A. Smith, both of Chicago (Kozlowski and Smith, of counsel), for appellants.

Warren L. Swanson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiffs brought this class action in the circuit court of Cook County seeking a declaratory judgment, an injunction, and an accounting. Defendant, City of Palos Heights, is a municipal corporation owning and operating a combined waterworks and sewerage system that supplies water to both the residents of Palos Heights and nonresidents such as plaintiffs. The crux of plaintiffs' complaint is that defendant is discriminating against them by charging them higher water rates than residents of Palos Heights are charged. Following defendant's combined motions to dismiss under sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48), the trial court dismissed the action with prejudice. The issue on appeal is whether the trial court erred in dismissing the action.

We reverse and remand.

Plaintiffs' complaint alleged the following facts.

Plaintiff corporations, Austin View Civic Association, Blue Crest Community Association, and Palos Gardens Civic Association, are not-for-profit corporations who brought this action on behalf of all residents living in their respective subdivisions, the Austin View Subdivision, the Blue Crest Subdivision, and the Palos Gardens Subdivision. Plaintiffs Lee Roy Erickson, Harley Bauch and Louis Rysdon are individuals residing in Worth Township. All of the plaintiffs reside in an unincorporated area located in Cook County between the city of Palos Heights and the village of Alsip. All of the members of the alleged class also reside in this area.

The village of Alsip, a municipal corporation, is located outside the southwest boundary of the city of Chicago. Alsip receives its water supply through pipes connected to pipes belonging to the city of Chicago. The unincorporated area is located directly west of Alsip. From 1957 until 1968, this area was provided with water by two private water companies located in the unincorporated area. These companies received their water through pipes connected to pipes belonging to Alsip.

Defendant, city of Palos Heights, is located directly west of the unincorporated area. In 1967, defendant, in order to provide water for its residents and pursuant to its power as a municipal corporation under section 11—139—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—139—2), purchased the two private water companies that were supplying water to the residents of the unincorporated area. Simultaneously, defendant entered into a contract with Alsip which allowed defendant to connect pipes to the water system previously owned by the two private water companies so that water could flow through to defendant's residents. Thus, the water used by defendant's residents originated in Chicago, came through Alsip and the unincorporated area, and ended up in Palos Heights. Under the contract with Alsip, defendant was to continue providing water to the residents of the unincorporated area.

On February 27, 1968, defendant enacted a water rate ordinance. Basically, the ordinance provided that nonresidents of Palos Heights were to pay 25% more for water than residents of Palos Heights. The ordinance also provided that residents of Palos Heights over the age of 65 were to receive a 25% discount on their water charges. On May 17, 1977, defendant enacted a second ordinance that increased water rates, with nonresidents paying 30% more than residents.

■■ Based on the above, plaintiffs alleged the following: (1) that defendant was unlawfully discriminating against them by charging them higher water rates than residents of Palos Heights because the difference in rates was arbitrary and bore no reasonable relationship to a difference in the cost of providing water to residents and nonresidents, and (2) that the ordinance was unconstitutional as a denial of equal protection of the law (Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV), as applied to plaintiffs and others living in the unincorporated area.[1]

Defendant filed a motion to dismiss the plaintiffs' complaint, claiming the corporate plaintiffs lacked standing to sue and, additionally, that the class action suit was a legally inappropriate proceeding in this case. This

---

[1] Plaintiffs also alleged that the difference in water rates was unconstitutional as an unequal tax (see Ill. Const. 1970, art. 9, §2), but, as defendant has indicated, water rates charged by municipalities to consumers are not considered to be taxes. (*Wagner v. City of Rock Island* (1893), 146 Ill. 139, 34 N.E. 545.) Thus, we find no need to further consider the question of whether there exists unequal taxation in this case.

motion was denied and defendant then filed a combined motion to dismiss under sections 45 and 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48(1)(i)).

Under section 45, defendant moved to strike certain paragraphs of plaintiffs' complaint as failing to state a cause of action. Particularly, defendant moved to strike those paragraphs of the complaint that described the factual background leading up to and including the purchase of the private water companies of Palos Heights, and further moved to strike a part of one paragraph that said that the ordinance provided for a water rate discount to residents over 65.

Under section 48(1)(i), defendant moved to dismiss the complaint based on affirmative matter defeating the claim or demand. The affirmative matter asserted was the contract, verified by affidavit, entered into between Palos Heights and Alsip. Under the terms of this contract Palos Heights was to charge all nonresident users of water "extended" from the Palos Heights' water system $.05 per thousand gallons more than residents of Palos Heights, and to pay over this excess amount to Alsip. Also, this contract was subject to the terms of a contract for the supply of water that Alsip had entered into with the city of Chicago. Under the Alsip-city of Chicago contract, Alsip, and, in turn, Palos Heights were charged a set rate for water they received from Chicago, but Alsip also had to pay to the city of Chicago a 50% surcharge for all water Alsip or Palos Heights provided to residents of unincorporated areas. Thus, in turn, Palos Heights was required to pay Alsip this surcharge for any water Palos Heights provided to unincorporated areas so that Alsip could pay the city of Chicago. Defendant alleged that the terms of its contract with Alsip proved it cost defendant more to supply water to plaintiffs than to its own residents,[2] and thus defendant had a rational basis for charging plaintiffs more for water than it charged residents of Palos Heights.

After a hearing, the trial court granted defendant's combined motions to dismiss with prejudice and adopted all of defendant's reasons as grounds for dismissal of plaintiffs' complaint. Following the denial of plaintiffs' motion to vacate the order of dismissal, the plaintiffs appealed.

OPINION

I

The major issue presented in this case is whether the trial court erred in dismissing plaintiffs' complaint under section 48(1)(i) of the Civil

---

[2] The formulas used for showing how the $.05 per thousand gallons and the 50% surcharge accounted for the 25% and 30% differences in rates established by the two Palos Heights' ordinances were discussed by both parties during the proceedings in the trial court. We will assume for the purposes of appeal that the extra amount charged plaintiffs is the amount needed to meet the contract charges.

Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)). Before discussing this issue, we find it necessary to briefly discuss the general nature of section 48(1)(i) and also discuss exactly what has been alleged in plaintiffs' complaint and exactly what defendant alleged as affirmative matter under section 48(1)(i).

## SECTION 48(1)(i)

Much of section 48 allows for dismissal of an action based on several specified affirmative defenses such as bar by a prior judgment, incapacity to sue, or unenforceability under the Statute of Frauds (see Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(a through h)), but section 48(1)(i) provides for dismissal based on many matters which are not necessarily classified as affirmative defenses. Section 48(1)(i) reads as follows:

> "(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:
>
> &ast; &ast; &ast;
>
> (i) That the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand."

Though on its face section 48(1)(i) appears to be all-encompassing it has certain limits. Its limits are determined by the basic rule that governs all motions to dismiss. That rule says that a motion to dismiss admits all well-pleaded facts, but it does not admit conclusions of law, nor does it admit conclusions of fact unsupported by allegations of specific fact upon which such conclusions rest. (*Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235; *Martin v. Po-Jo, Inc.* (1969), 104 Ill. App. 2d 462, 244 N.E.2d 851.) Because of this rule, section 48(1)(i) is not intended to be used in place of a motion for summary judgment (*McNeil v. Allstate Insurance Co.* (1966), 69 Ill. App. 2d 270, 216 N.E.2d 3; see also *Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 378 N.E.2d 522, *aff'd* (1979), 77 Ill. 2d 323, 396 N.E.2d 504; *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440). Also, because of the rule, it has been held that if the alleged affirmative matter under section 48(1)(i) is nothing more than evidence offered to refute a well-pleaded fact stated in the complaint, then the alleged matter is not "affirmative matter" that warrants a dismissal under section 48(1)(i), since the well-pleaded fact must be taken as true for the purposes of a motion to dismiss. (*Dangeles v. Marcus* (1978), 57 Ill. App.

3d 662, 373 N.E.2d 645; *House of Realty, Inc. v. Ziff* (1973), 9 Ill. App. 3d 419, 292 N.E.2d 71.) But if the alleged affirmative matter is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint, then the alleged affirmative matter is a proper grounds for dismissal under section 48(1)(i). See *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105; *Meeker v. Webner* (1977), 51 Ill. App. 3d 716, 366 N.E.2d 539; *Millan v. Seibt* (1977), 49 Ill. App. 3d 506, 364 N.E.2d 521; *Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 342 N.E.2d 329; *Ingersoll v. Klein* (1969), 106 Ill. App. 2d 330, 245 N.E.2d 288.

Keeping the foregoing rules in mind, we now turn to a discussion of what plaintiffs have alleged in their complaint.

### PLAINTIFFS' ALLEGATIONS

Plaintiffs, in separate paragraphs of their complaint, have alleged two conclusions. In certain paragraphs, they allege that for defendant to charge nonresidents such as plaintiffs more for water than residents of Palos Heights results in unlawful discrimination because the difference in rates bears no reasonable relationship to a difference in the costs to defendant of supplying water to the two classes. In other paragraphs, plaintiffs have alleged that the difference in rates results in discrimination in violation of equal protection of the law. Plaintiffs support both of these conclusions with specific factual allegations outlining the history of the water supply system in the area, which allegations tend to support their conclusions. Defendant has assumed throughout this case that the above two conclusions are really one and the same, in that plaintiffs are alleging only that they have been denied equal protection of the law. Defendant's assumption is incorrect. Equal protection of the law is not the only right involved in this case. Plaintiffs also have a common law right that prevents defendant from engaging in unreasonable discrimination.

■■ When a municipal corporation owns and operates a water system for the purpose of selling water to consumers, it is acting in a business capacity and is generally to be treated as if it were a private utility company. (*Baltis v. Village of Westchester* (1954), 3 Ill. 2d 388, 121 N.E.2d 495; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.) The business of supplying water belongs to that class of enterprises upon which the public interest is impressed. (*City of Chicago v. Northwestern Mutual Life Insurance Co.* (1905), 218 Ill. 40, 75 N.E. 803; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.) At common law, such an enterprise, because it had a monopoly on the service provided in the area, was prohibited from charging exorbitant

rates and was required to serve all of its consumers without unreasonable discrimination in rates or manner of service. (See *Terminal Railroad Association v. Public Utilities Com.* (1922), 304 Ill. 312, 136 N.E. 797; *Snell v. Clinton Electric Light, Heat & Power Co.* (1902), 196 Ill. 626, 63 N.E. 1082; *Wagner v. City of Rock Island* (1893), 146 Ill. 139, 34 N.E. 545; *Foltz v. City of Indianapolis* (1955), 234 Ind. 656, 130 N.E.2d 650; 64 Am. Jur. 2d *Public Utilities* §16 (1972).) Today, private utility companies are prevented from charging exorbitant rates or from engaging in unreasonable discrimination in rates or manner of service by statute, and are no longer subject to the common law. (See Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 32, 38).) Though there is no statute that prevents municipal corporations that operate public utilities from acting in an unreasonably discriminatory manner, there is still the common law duty that prevents them from doing so.[3]

■■ As a matter of constitutional law, a municipal corporation is not immune from claims alleging violations of common law rights unless such immunity is provided by statute. (Ill. Const. 1970, art. 13, §4.) In the present case, there is no statute providing immunity to defendant when it treats consumers in an unreasonably discriminatory manner. Thus, plaintiffs can assert that defendant violated their common law right prohibiting unreasonable discrimination in water rates.

As already noted, plaintiffs alleged in certain paragraphs of their complaint two separate conclusions. They alleged in some paragraphs that the defendant's charging them higher water rates than residents of Palos Heights was a discriminatory act in violation of equal protection of the law. In other paragraphs, they alleged that defendant was unlawfully discriminating against them by charging them higher rates because the difference in rates was arbitrary and bore no reasonable relationship to a difference in the costs to defendant of providing water to Palos Heights' residents and to nonresidents such as plaintiffs. We believe this latter allegation, along with the specific facts to support it, sufficiently states a violation of plaintiffs' common law right prohibiting unreasonable discrimination in water rates.

Thus, there are two rights involved in this case, a constitutional right and a common law right. As we will discuss, the fact that there are two rights is important to a decision involving section 48(1)(i) of the Civil

---

[3] We note that there appears to be a statutory provision that prevents a municipal corporation owning and operating a combined waterworks and sewerage system from charging exorbitant rates. Section 11—139—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—139—8) allows a municipal corporation to charge its residents only a "reasonable compensation" for the use of water. This same rule applies to water a municipal corporation supplies to nonresidents extended from its system. Ill. Rev. Stat. 1977, ch. 24, par. 11—149—2.

Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)), but first we turn to an explanation of what defendant has alleged under section 48(1)(i).

### DEFENDANT'S AFFIRMATIVE MATTER

Defendant has alleged that the contract entered into between defendant and Alsip is "affirmative matter" as that term is used under section 48(1)(i) because it proves that defendant had a rational basis for charging plaintiffs more for water than it charged residents of Palos Heights. Defendant misunderstands what is meant by "affirmative matter avoiding the legal effect of or defeating the claim or demand" as those words are used in section 48(1)(i). He has confused evidence that is used to prove the affirmative matter with what is the affirmative matter.

As previously noted, "affirmative matter" as that term is used in section 48(1)(i) is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. An allegation that a contract exists is not something in the nature of a defense, but an allegation that defendant had a rational basis for its classification scheme may be something in the nature of a defense. Thus, the contract can only be evidence offered to prove the alleged affirmative matter that a rational basis for the classification scheme exists. The situation here is similar to a party asserting unenforceability under the Statute of Frauds as a basis for dismissal under section 48(1)(g) (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(g)). The Statute of Frauds is many times asserted as an affirmative defense and then is usually supported by affidavits or other factual proof showing the defense exists.

Thus, it is defendant's allegation that it had a rational basis for the classification scheme that is being asserted here as affirmative matter under section 48(1)(i) and the contract is evidence offered to prove that a rational basis exists.

Now that we have determined the rights involved in this case, the meaning of section 48(1)(i), and what defendant is alleging under that section, we turn to a discussion of what we believe are the major issues in this case, which are: (a) whether defendant's allegation that it had a rational basis for its classification scheme could itself be grounds for dismissal under section 48(1)(i) of plaintiffs' claim based on denial of equal protection of the law or of plaintiffs' claim of denial of its common law right preventing unreasonable discrimination in water rates; and (b) whether defendant's contract with Alsip was alone sufficient to establish that defendant had a rational basis for its classification scheme.

## II

■■ The first issue we consider is whether defendant's assertion that it had a rational basis for the classification scheme could be grounds for dismissal under section 48(1)(i) of plaintiffs' claim that they were denied equal protection of the law. We hold that a rational basis for the classification scheme can be asserted as affirmative matter under section 48(1)(i) to defeat plaintiffs' claim of denial of equal protection of the law.

The constitutional right to equal protection of the law prevents a government body from setting up a classification scheme that distinguishes between members of the public and unreasonably discriminates against certain of those members. Not every classification scheme is invalid. Only those that result in unreasonable discrimination are invalid. In cases not involving a classification based on a "suspect class," such as race, or one that denies a specific class of people a fundamental right, such as freedom of speech, there is a strong presumption that a classification scheme established by statute or ordinance is valid. (See *Spaulding v. Illinois Community College Board* (1976), 64 Ill. 2d 449, 356 N.E.2d 339; *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97, *cert. denied* (1976); *Hurley v. Illinois*, 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 329 N.E.2d 213; *People v. Sherman* (1974), 57 Ill. 2d 1, 309 N.E.2d 562.) In cases where the presumption prevails, a party asserting unconstitutional discrimination resulting from a classification scheme has the burden of showing that the classification bears no rational relationship to a legitimate legislative purpose. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 329 N.E.2d 213.) If any state of facts may reasonably be *conceived* to justify the classification, then the classification will be upheld as valid. (*Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325; *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97, *cert. denied* (1976); *Hurley v. Illinois*, 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87.) The foregoing is the so-called "rational basis" or "minimum scrutiny" test.

As our supreme court has indicated, under the "rational basis" test, a court may act independent of the arguments of the parties, and, on its own, reasonably conceive of facts that justify the classification scheme. (See *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) As a result, when the rational basis test applies, the question of whether there is unreasonable discrimination in violation of equal protection of the law caused by a classification scheme established by a government body is really one of law for the court to determine. Therefore, when a plaintiff asserts in his complaint that he has been subjected to unreasonable discrimination in violation of equal protection of the law, he is making a conclusion of law, even though he may support

this allegation with specific facts. Since a conclusion of law is not admitted for the purposes of a motion to dismiss, affirmative matter that defeats the conclusion of law that a plaintiff has been subjected to unreasonable discrimination in violation of equal protection of the law can be asserted under section 48(1)(i) as a grounds for dismissal of the complaint. The affirmative matter that one can assert in such a case is that there is a rational basis for the classification scheme, meaning the classification scheme bears a rational relationship to a legitimate legislative purpose. This is so because the allegation that there is a rational basis for the classification scheme is something in the nature of a defense that legally defeats a plaintiff's conclusion of law that he has been subjected to unreasonable discrimination in violation of equal protection of the law.

Accordingly, since plaintiffs here are not members of a suspect class and are not asserting the denial of a fundamental right, we hold that defendant could assert as affirmative matter under section 48(1)(i) that it had a rational basis for charging nonresidents of Palos Heights more for water than it charged residents, at least as far as plaintiffs alleged they were denied the right to equal protection of the law.

### III

The next issue we consider is whether the allegation that defendant had a rational basis for the classification scheme could itself be grounds for dismissal, under section 48(1)(i), of plaintiffs' claim that they were denied their common law right preventing unreasonable discrimination in water rates. We hold that a rational basis for the classification scheme could not be asserted as affirmative matter under section 48(1)(i) to defeat plaintiffs' common law right.

The allegation that defendant had a rational basis for its classification scheme would not be affirmative matter under section 48(1)(i) because the rational basis test that applies to plaintiffs' claim of denial of equal protection is not applicable to their common law right preventing unreasonable discrimination in water rates. When it comes to the extent of plaintiffs' protection under their common law right, our supreme court has noted that consumers of municipally owned utilities "are just as completely protected from exorbitant rates and unjust discrimination as the consumers are under the Public Utilities Act [Ill. Rev. Stat. 1977, ch. 111 2/3, par. 1 *et seq.*]." (*Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 252-53, 126 N.E. 739, 746.) Thus, the test to be applied in determining whether there has been a violation of plaintiffs' common law right is the same test used to determine whether a privately owned utility company is acting in an unreasonably discriminatory

manner in violation of the Public Utilities Act when it charges different rates to different consumers.

When a privately owned utility is charged with unreasonable discrimination in rates, the test used for deciding the validity of the difference in rates is to determine whether the difference is reasonable, and not arbitrary, based on a consideration of such factors as differences in the amount of the product used, the time when used, the purpose for which used, or any other relevant factors reflecting a difference in costs. (See *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 276 N.E.2d 330; *City of St. Charles v. Illinois Commerce Com.* (1961), 21 Ill. 2d 259, 172 N.E.2d 353.) If the difference in rates is reasonably related to a difference in the costs of providing the service, there is no unreasonable discrimination.

Though the foregoing test appears to be similar to the rational basis test applied to cases involving claims of denial of equal protection of the law, there is at least one significant difference. As previously noted, under the rational basis test, the question of whether unreasonable discrimination in violation of equal protection of the law exists, that is, the question of whether a classification scheme is rationally related to a legitimate legislative purpose, is always one of law; but when a privately owned utility company is charged with unreasonable discrimination in rates in violation of the Public Utilities Act, the question of whether such discrimination exists, that is, the question of whether the difference in rates is reasonably related to a difference in the costs of providing the service, is always one of fact to be based solely on the evidence presented (see *Produce Terminal Corp. v. Illinois Commerce Com.* (1953), 414 Ill. 582, 112 N.E.2d 141; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235). It is this difference in the tests that precludes defendant from asserting as affirmative matter under section 48(1)(i) that it had a rational basis for charging different rates.

Since plaintiffs' alleged violation of their common law right is to be determined by use of the same test that is used for privately owned utility companies charged with unreasonable discrimination, then, in the present case, the question of whether there is unreasonable discrimination in water rates is one of fact to be based solely on the evidence presented. Thus, when plaintiffs alleged in their complaint that defendant's rate structure was arbitrary and discriminatory because it bore no reasonable relationship to a difference in the costs of providing water to Palos Heights' residents and to nonresidents such as plaintiffs, though they were alleging a conclusion, it was a conclusion of fact, and since this conclusion was supported by allegations of specific fact tending to show that there was no difference in costs, it had to be accepted as true for the purposes of

the motion to dismiss. This conclusion was, of course, the same thing as concluding that there was unreasonable discrimination in water rates. When defendant asserted as affirmative matter under section 48(1)(i) that it had a rational basis for its classification scheme, that was the same as asserting that there was no unreasonable discrimination. Thus, defendant was merely attempting to refute a well-pleaded fact alleged in the complaint, and this he could not do under section 48(1)(i) as far as plaintiffs' alleged violation of their common law right prohibiting unreasonable discrimination in water rates.

■■ Accordingly, we hold that defendant could not assert as affirmative matter under section 48(1)(i) that it had a rational basis for its classification scheme as grounds for dismissal of plaintiffs' common law right prohibiting unreasonable discrimination in water rates.

## IV

■■ The next issue for consideration is whether the contract entered into between defendant and Alsip was sufficient in itself to prove that defendant had a rational basis for the classification scheme, and thus sufficient to defeat plaintiffs' claim of denial of equal protection of the law. We hold that the contract alone was insufficient to establish a rational basis for defendant's classification scheme.

Under the rational basis test all that need be found is that defendant's classification scheme was rationally related to a legitimate legislative purpose. (S. *Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 329 N.E.2d 213.) Defendant has a legitimate legislative purpose in charging water rates because it is required by law to establish rates for the sale of water that are sufficient to cover all of its costs in supplying water to its consumers, whether such consumers are residents or nonresidents of Palos Heights. (See Ill. Rev. Stat. 1977, ch. 24, pars. 11—139—8, 11—149—2.) Defendant's charging of higher rates to nonresidents of Palos Heights than to residents could be justified as rationally related to its legislative purpose if the higher rates reflected a difference in the costs to defendant of supplying such water.

On its face, the contract between defendant and Alsip shows that it costs defendant more to supply water to plaintiffs than to residents of Palos Heights. One term of the contract requires that defendant charge nonresidents "extended" from its system $.05 per thousand gallons more for water than residents of Palos Heights. The trial court made no attempt to determine whether this contract term applied to plaintiffs, who do not at the moment appear to be nonresidents that were "extended" from defendant's system, since they were already being supplied with water by the two private water companies when defendant purchased them. But since it does not appear that this contract term accounts for the bulk of

plaintiffs' higher rates, we will assume for the purposes of argument that plaintiffs were subject to this $.05 per thousand gallons extra charge. The most crucial term of the contract, and that which evidently accounts for most of plaintiffs' higher rates, is the requirement that defendant must pay Alsip, who in turn must pay the city of Chicago, a 50% surcharge over the normal price for water for all water Palos Heights supplies to nonresidents of Palos Heights.

Though the contract shows that defendant incurs greater costs in supplying water to plaintiffs, defendant has assumed a fact that we are not able to assume. Defendant has assumed that, as a matter of law, the contract itself is valid and the entering into the contract was a legitimate exercise of legislative power. Defendant has the power to enter into a contract with another municipal corporation for the purpose of procuring a supply of water under section 11—124—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—124—1), but defendant does not have the power to enter into any contract that would deny third persons, not parties to that contract, the equal protection of the law.

Keeping the foregoing in mind, we examine the substance of defendant's argument. Defendant has enacted two ordinances establishing higher rates for water supplied to nonresidents of Palos Heights, such as plaintiffs, than for water supplied to residents. On its face, the ordinances offer no reasons why nonresidents are charged more. To justify these ordinances, defendant presents us with a contract which says defendant must charge more for water supplied to nonresidents of Palos Heights, such as plaintiffs, than for water supplied to residents. On its face, the contract offers no reasons why nonresidents are charged more. Thus, the substance of defendant's argument is that it is justified in charging nonresidents, such as plaintiffs, more for water than residents merely because they are nonresidents. A classification scheme cannot be justified by merely declaring the classes are different. (See *Begich v. Industrial Com.* (1969), 42 Ill. 2d 32, 245 N.E.2d 457.) Something more is required to show that a rational basis exists for the classification scheme.

Since the substance of defendant's argument is that it can charge more for water supplied to nonresidents, such as plaintiffs, than for water supplied to residents merely because they are nonresidents, we must necessarily hold that the contract alone was insufficient to establish a rational basis for defendant's classification scheme. This is not to say that the ordinances or the contract are invalid. Defendant, Alsip, or the city of Chicago, may have many valid reasons for charging plaintiffs more for water—and plaintiffs have the burden of showing no valid reasons exist—but when defendant moved to dismiss under section 48(1)(i), it presented no reasons to justify its classification. Thus, it was improper to dismiss plaintiffs' claim of denial of equal protection of the law based solely on

the allegation that the contract proved a rational basis for the classification scheme existed.

We note that since the question of whether there is a rational basis for the classification scheme, that is, the question of whether there is unreasonable discrimination in violation of equal protection of the law, is one of law, this court has the power to determine, on its own, if any state of facts can reasonably be conceived to justify the classification scheme. Though we have this power, we find no basis to exercise it since we have not been asked to determine if a rational basis exists. We have only been asked to determine if the contract alone was sufficient to establish a rational basis, a question we have answered in the negative.

## V

The next issue we consider is whether the trial court's striking certain paragraphs of the complaint pursuant to defendant's motion to dismiss under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45) was proper.

The trial court, pursuant to defendant's motion, struck several paragraphs of plaintiffs' complaint as failing to state a cause of action. Those paragraphs included the following factual allegations: (1) that plaintiffs had been provided with water for many years by the two private water companies prior to their purchase by defendant; (2) that defendant purchased the two private water companies and then attached new pipes to the already existing pipes of the two private water companies so that defendant could provide water to its residents; and (3) that as far as the manner of supplying water to plaintiffs was concerned, nothing changed after defendant purchased and then operated the two water companies. Defendant was also allowed to strike, as failing to state a cause of action, a part of one paragraph in plaintiffs' complaint alleging that residents of Palos Heights over the age of 65 were receiving a 25% discount for water supplied to them.

Under section 45 a party may object to pleadings by a motion asking "that a pleading or portion thereof be stricken because substantially insufficient in law, or that the action be dismissed, or that a pleading be made more definite and certain in a specified particular, or that designated immaterial matter be stricken out, or that necessary parties be added, or that designated misjoined parties be dismissed, and so forth." Ill. Rev. Stat. 1977, ch. 110, par. 45(1).

■■ The procedure employed by defendant in his motion under section 45 was inappropriate. Defendant moved to strike specific paragraphs of the complaint as themselves failing to state a cause of action. It appears that defendant incorrectly assumed that each and every paragraph of

plaintiffs' complaint had to state a cause of action independent of the other paragraphs in the complaint. Paragraphs in a complaint are used to set out facts that when read together state a cause of action, but each paragraph of the complaint is not in itself required to state a cause of action. (See Ill. Rev. Stat. 1977, ch. 110, par. 33.) If defendant wanted certain paragraphs stricken as being immaterial, then he should have alleged they were immaterial. If defendant wanted the complaint dismissed as failing to state a cause of action, then he should have moved to dismiss the entire count of the complaint.

Accordingly, we conclude it was improper for the trial court to strike specific paragraphs of the complaint as themselves failing to state a cause of action.

## VI

■■ The last issue we resolve is raised by defendant who contends the trial court erred in denying defendant's original motion to dismiss as far as it alleged the corporate plaintiffs lacked legal standing to bring the cause of action on behalf of their members. The trial court found that in spite of the fact that the corporate plaintiffs did not themselves allege that they purchased water from plaintiff, they still had standing to sue solely on behalf of their members who did purchase water from defendant. We agree with defendant that the corporate plaintiffs lacked standing to sue solely on behalf of their members.

Though the case was not cited by either party, we find that our supreme court's decision in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298, is directly on point and completely disposes of this issue. In that case, plaintiff, a not-for-profit corporation, brought an action on behalf of its members for declaratory relief against the city of Chicago. In its complaint, plaintiff alleged that its members, several construction companies who did business with defendant, were being treated illegally by the defendant, city of Chicago, in the manner in which defendant chose whose bid would be accepted for certain city projects. Defendant moved to dismiss alleging that plaintiff lacked standing to bring the suit since the corporation itself did no business with the city of Chicago. The trial court denied the motion, and defendant was granted leave to file a direct appeal to the supreme court.

In reviewing the decision of the trial court, the supreme court held that, in order for a plaintiff to have standing to sue, the plaintiff himself must have a personal interest in the controversy, meaning that plaintiff himself must have suffered, or be in immediate danger of suffering, an injury caused or about to be caused by the defendant. The court concluded that, though a not-for-profit corporation may in some cases be allowed to assert the rights of its members, it could only do so if both the

corporate plaintiff and its members have suffered or are about to suffer an injury. Since the corporate plaintiff was not able to show that it suffered or was about to suffer injury in its individual capacity, it could not bring suit solely on the basis of alleged injury to its members.

Therefore, in the present case, unless the three corporate plaintiffs can allege and prove that they have suffered an injury in their individual capacities, they lack standing to sue on behalf of their members.

Accordingly, for the reasons stated, we reverse the decisions of the trial court and remand the cause for further proceedings consistent with the conclusions reached herein.

Reversed and remanded.

JIGANTI and ROMITI, JJ., concur.