(No. 37595.—

WALTER CONNER, Appellant, *vs.* THE CITY OF ELMHURST *et al.,* Appellees.

*Opinion filed May 27, 1963.*

PETER W. ERNST, of Elmhurst, for appellant.

GEORGE BILLETT, of Chicago, (EDWARD J. VERTOVEC, of Elmhurst, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the construction and the constitutionality of a 1961 amendment to the statute under which the city of Elmhurst operates its combined water works and sewer system. It also involves the validity of two ordinances enacted by the city under the authority of that amendment.

The first of the challenged ordinances directed that the existing combined waterworks and sewerage system be improved by "The construction and installation of approximately 3,350 feet of 8″ to 30″ relief storm sewers to reduce the hydraulic load of certain existing combined storm and sanitary sewers, including the construction of relief trunk sewer in Harrison Street and relief street lateral sewers in Cadwell, Stratford and Hillcrest Avenues and the plugging of certain storm water inlets." The estimated cost of the improvements was $25,000, and the ordinance provided for the issuance of revenue bonds in the amount of $14,000, the proceeds of which, together with $11,000 "from other sources available to said City," were to be used to pay for the improvements.

The second ordinance recited the passage of the first, and provided that after the issuance of the $14,000 of revenue bonds there should be charged and collected, in a portion of the city described by lot and block numbers, "the sum of $1.10 per month for each unit for water and sewer services in addition to the rates from time to time generally charged for such services throughout the City."

The plaintiff, who resides in the area that is subjected to the additional charge, brought this action to restrain the city and its officers from enforcing the ordinances. His complaint alleged (1) that the city is not authorized by statute to issue revenue bonds to pay for storm water sewers and storm water drainage; (2) that the statute which authorizes the imposition of increased rates applicable

only to a part of the city, and the ordinance that imposes such rates, violate the due process clauses of the State and Federal constitutions in that they authorize discriminatory rates; and (3) that the ordinance providing for increased rates is invalid because the applicable statute requires that bonds be issued before such an ordinance is adopted.

The answer of the city admitted the allegations concerning the plaintiff's residence and the enactment of the ordinances. It denied the first and third of the allegations set forth above. The answer also denied that the imposition of a greater charge upon plaintiff and others in the described area was discriminatory, "affirmatively stating that the Plaintiff receives a benefit greater than those who are not within the district included in the ordinance." In his reply the plaintiff denied "that he will receive a greater benefit by the payment of this additional sum of money than others attached to the same City Sewer System." The trial court entered judgment for the defendants on the pleadings, without any trial. The plaintiff has appealed directly to this court since the constitutionality of a statute is involved. Ill. Rev. Stat. 1961, chap. 110, par. 75.

The first question before us involves a construction of the applicable statute to determine whether it authorizes the ordinances enacted by the city. The basic statutory authority under which the city operates its combined waterworks and sewerage system is now contained in division 139 of the Municipal Code of 1961. (Ill. Rev. Stat. 1961, chap. 24, pars. 11—139—1 to 11—139—12.) That division defines the terms "waterworks" "sewerage system" and "combined waterworks and sewerage system", and it authorizes the issuance of revenue bonds to finance their acquisition or construction. In 1961 section 11—139—8 was amended by adding the following paragraph: "Whenever a municipality shall issue revenue bonds as provided by this Division to pay the cost of the extension or improvement of its combined waterworks and sewerage system or any part

thereof to serve a particular area of the municipality, the municipality may vary its rates to be charged for the water and sewer services of the system or for either of them so that the rates to be charged for services in the particular area to be served by such extension or improvement shall be calculated to produce, in addition to the revenues generally to be produced by such rates, sufficient funds to pay the principal of and interest upon the revenue bonds issued to pay the cost of such extension or improvement for that particular area." Ill. Rev. Stat. 1961, chap. 24, par. 11—139—8.

The plaintiff contends that the amendment does not authorize the financing of the "relief storm sewers" here involved by the imposition of additional rates within a particular area designated by the city council. In support of his contention he points to the difference between the definition of the term "sewerage system" in division 139 of the Municipal Code and the definition of the same term in division 141, which is concerned with the issuance of revenue bonds to finance the construction or acquisition of a sewerage system that is not combined with a waterworks system.

As originally enacted in 1933 as Senate Bill 245, the present division 141 contained the following definition of the term "sewerage system": " 'Sewerage system' means and includes any or all of the following: A sewage treatment plant, or plants, collecting, intercepting and outlet sewers, force mains, conduits, pumping stations, ejector stations and all other appurtenances or improvements necessary or useful and convenient for the collection, treatment and disposal, in a sanitary manner, of sewage and industrial wastes." Laws of 1933, p. 277.

The present division 139 was originally enacted in 1934. (Laws of 1933-34, 3rd Special Session, p. 136.) In all respects here pertinent, its definition of the term "sewerage system" was identical with the definition contained in the

earlier Senate Bill 245. In 1936 the predecessor of the present division 139 was amended by adding the words "including combined storm water and sanitary drains" to the definition of "sewerage system." Laws of 1935-36, 1st Special Session, p. 50.

In 1937 the predecessor of the present division 141 was amended by adding to the definition of the term "sewerage system" the following: "including the disconnection of storm water drains and constructing outlets therefor, where, in any case, such work is necessary to relieve existing sanitary sewers of storm water loads, in order to permit the efficient operation of such sanitary sewers for collection, treatment and disposal of sewage and industrial wastes." The amending act contained the following emergency clause: "WHEREAS, certain municipalities must necessarily disconnect storm drains from the sanitary sewers of such municipalities and construct outlets for such storm drains in order to relieve the existing sanitary sewers of storm water loads, in the interest of public health and sanitation, and aid has been offered such municipalities in the accomplishment of such work by the Federal Government if the municipalities are able to supply their proportionate share of the cost of the work, and it is necessary if aid is to be received that such municipalities immediately produce their share of the cost of such work, therefore an emergency exists and this Act shall take effect upon its passage." Laws, 1937, p. 315.

If the original definition of "sewerage system" stood alone, without amendment, the reference to "all other appurtenances * * * necessary or useful and convenient", would, we think, include storm water sewers necessary to prevent overloading of sanitary sewers. Earlier decisions interpreting the word "adjuncts", when used in a similar context, would support that conclusion. (*People ex rel. Bailey* v. *Downers Grove Sanitary Dist.* 359 Ill. 601, 607; *Bunge* v. *Downers Grove Sanitary Dist.* 356 Ill. 531.)

But the plaintiff's position is that the General Assembly did not so interpret its own language; if it did, the 1937 amendment to the definition in what is now division 141 of the Municipal Code would not have been necessary.

The persuasiveness of this argument is diminished, however, when it is applied to the 1936 amendment to the same definition in what is now division 139 of the Municipal Code. The result would then be that the initial broad definition of the term "sewerage system" included neither "combined storm water and sanitary drains" nor "separate storm water drains necessary to relieve existing sanitary sewers of storm water loads." The argument based upon restrictive inferences drawn from the amendments thus proves too much, for its devitalizes the original definition. It seems more likely that the two amendments reflected the scruples of bond counsel than that they underscored the narrowness of the original grant of legislative authority. We hold, therefore, that the definition of "sewerage system" in division 139 includes necessary incidental storm water sewers.

This conclusion brings us to the most serious issue in the case, which arises from the plaintiff's assertion that the increased rate imposed upon his property is discriminatory. This issue was raised in the complaint. The city's answer justified the discrimination in rates, which appears on the face of the second ordinance, on the affirmative ground that "the plaintiff received a benefit greater than those who are not within the district included in the ordinance." In his reply the plaintiff denied this allegation. No evidence was heard. Judgment was entered against the plaintiff without any determination of the factual issue thus raised by the pleadings.

The judgment so entered must be reversed unless it is to be held, as a matter of law, that the determination of a city council to impose higher rates upon some property

than those imposed upon other property receiving the same service, is conclusive and beyond judicial review. We can not so hold. *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236, 253; see also *Bockenfeld* v. *City of Quincy,* 232 Ill. App. 52, 59.

If the additional change is regarded as a tax, it offends the uniformity requirement of article IX of the constitution unless it can be regarded as a special assessment or special tax. (Const., art. IX, secs. 1, 9.) The city argues that the contemplated project is a local improvement that could have been financed by special assessment levied upon the property specially benefited. But it was not so financed, and it is significant that before a special assessment could be levied, the statute requires a judicial determination, after notice and hearing, of the allocation of cost between the city as a whole and the private property assessed, as well as a judicial determination that the property in question has not been assessed more than it has been benefited. Ill. Rev. Stat. 1961, chap. 24, art. 9.

If the additional charge is regarded not as a tax, but in the nature of a public utility service charge, (*City of Edwardsville* v. *Jenkins,* 376 Ill. 327) it is subject to the same rules that would apply to a privately owned public utility. "[T]he fact that the service is by a municipal plant does not change the rule prohibiting unreasonable discrimination." 50 A.L.R. 126; see cases collected, 50 A.L.R. 126; 4 A.L.R. 2d 595.

The decision that is most closely in point, *Spalding* v. *City of Granite City,* 415 Ill. 274, is not cited in the briefs of either party. There we sustained the issuance of sewer revenue bonds payable solely by the inhabitants of an area recently annexed to the city in which no sewers had existed. The opinion emphasized, however, that no property owner in the area was required to connect with the sewer system and that the charge fixed would be imposed only upon those

property owners who elected to use the system. In the present case the charges imposed by the ordinance can not be said to be of a similar contractual nature. They are imposed upon the property described in the ordinance on the basis of a fixed monthly amount "per unit." Neither the ordinance that imposes the charge, nor, so far as we have been able to ascertain, any other ordinance of the city of Elmhurst defines the term "unit." But there is no doubt that the charge is imposed upon each of the lots enumerated in the ordinance, without regard to the consent of the owner. We hold, therefore, that it was error to enter judgment against the plaintiff without determining the factual issue as to benefits that was raised by the pleadings.

There remains the plaintiff's contention that the second ordinance is invalid because it established increased rates in advance of the issuance of the bonds. This contention is based upon the provision of the statute that "Whenever a municipality shall issue revenue bonds * * * the municipality may vary its rates to be charged for water and sewer services * * *." On the basis of this language the plaintiff contends that the municipality must have issued the revenue bonds before the new rates can be fixed. In our opinion the statute is not to be read so literally, for as a practical proposition it is clear that the proposed bonds could not be sold until a rate ordinance had been adopted. The construction urged by the plaintiff would make the statutory scheme unworkable.

For the reasons stated the judgment of the circuit court of Du Page County is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*