INLAND REAL ESTATE CORPORATION *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF PALATINE, Defendant-Appellant.—(FERNDALE HEIGHTS UTILITIES CO., Defendant.)

First District (5th Division)    No. 81-3051

Opinion filed June 18, 1982.—Rehearing denied July 21, 1982.

Littlejohn, Glass & Yowell, Ltd., of Northbrook (Bradley M. Glass, G. Kent Yowell, and Everett M. Hill, Jr., of counsel), for appellant.

Edward G. Finnegan, Ltd., of Chicago, for appellees.

Rudnick & Wolfe, of Chicago (Don E. Glickman, of counsel), for *amici curiae* La Salle National Bank, Trustee, American National Bank, Trustee, Amdur Associates, Inc., Schaumburg Management Co., Inc., and Midwest Multi-family Management, Inc.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal, we granted the application under Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308) of defendant Village of Palatine (Palatine) which sought reversal of an interlocutory order directing it to file applications with the Illinois Commerce Commission (ICC) for approval of both its acquisition of the Ferndale Heights Utility Company (Ferndale)[1] and its proposed water rates for Ferndale's former customers.

The facts are largely undisputed. Palatine purchased the plant and facilities of Ferndale, which were located in an unincorporated area outside the boundaries of Palatine and separate and apart from the utility system used by Palatine in servicing its own residents. By ordinance, Palatine adopted water rates for the Ferndale customers which were not only higher than those previously approved by the ICC but also were more than the rates charged Palatine's own residents. Plaintiffs, as former Ferndale customers, then filed this suit as a class action for "injunction, specific performance and other relief" which, in pertinent part, sought

---

[1] Ferndale, as co-defendant, is not involved in this appeal.

certain injunctive relief with respect to the increased water rates and also asked either that the acquisition of the Ferndale plant be set aside or that the court make a determination of reasonable water rates.

It appears that a preliminary injunction was entered restraining Palatine from discontinuing water service to plaintiffs because of any refusal on their part to pay water charges in excess of those contained in the Ferndale tariff. Palatine then moved to dismiss plaintiffs' complaint, but the record indicates that no action had been taken on the motion when Palatine presented a number of motions in a single pleading, pertinent of which were motions (a) for partial summary judgment and (b) to modify the injunctive order. In the former, Palatine alleged that its operation and ownership of the Ferndale facilities was not subject to regulation by the ICC and, following a hearing, the court made a finding that the acquisition by Palatine of the Ferndale facilities and the regulation of water rates to the former Ferndale customers "are subject to the jurisdiction of the Illinois Commerce Commission and require its prior approval." On the basis thereof, an order was entered in which Palatine's motions for partial summary judgment and to modify the injunction order were denied, and Palatine was directed to seek ICC approval of the Ferndale acquisition and of the water rates it proposed.

OPINION

The sole contention raised by Palatine on appeal is that the trial court improperly directed it to seek approval of the ICC of its Ferndale acquisition and of the proposed water rates.

Initially, we note that the ICC is an administrative body which was established by and derives its authority from the Public Utilities Act (Act) (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 1 *et seq.*) and that it has no authority except that expressly conferred upon it (*Black Hawk Motor Transit Co. v. Illinois Commerce Com.* (1947), 398 Ill. 542, 76 N.E.2d 478; *Liberty Trucking Co. v. Illinois Commerce Com.* (1980), 81 Ill. App. 3d 466, 401 N.E.2d 581). Further, the ICC is without power to extend its jurisdiction, as that is within the prerogative of the legislature. *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334.

The purpose of the Act is to provide for regulation of public utilities, and its provisions grant authority to the ICC over the ownership and operation of "public utilities" as the term is defined therein in section 10.3. However, we think it clear from the express language of the Act, as well as the case law interpreting it, that while a public utility within the meaning of the statute includes a utility owned and operated by a private corporation, a municipally owned utility is excluded under section 10.3 thereof, which in relevant part provides:

" 'Public utility' does not include, however:

1. public utilities that are owned and operated by any * * * municipal corporation of this State, * * *;

* * * ."

Ill. Rev. Stat. 1979, ch. 111 2/3, par. 10.3.

As explained in *Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 240-43, 126 N.E. 739, 741-42, *aff'd* (1921), 257 U.S. 66, 66 L. Ed. 131, 42 S. Ct. 24:

> "Municipal corporations, however, are expressly excepted from the terms and provisions of the Public Utilities act by section 10 thereof and in a very emphatic manner,—so much so that there can be no question that the act was not intended to apply to any public utility owned by a city.
>
> * * *
>
> The statute, we must infer, was adopted in accordance with a plan. [Citation.] That plan was, that all private corporations owning and operating public utilities should be bound by all the provisions of the act and that all municipal corporations should be excluded from the provisions of the act. Public utilities owned and operated by municipalities were to be governed and controlled by the provisions of the Municipal Ownership act and regulated only by such municipalities."

■■ It is thus our belief that the Act eliminates municipally owned public utilities from ICC review without exception, and we have found no other language in the Act, nor have plaintiffs referred us to any, which either manifests an intention of the legislature to provide otherwise or which distinguishes municipal ownership of a utility within its corporate limits from ownership beyond its territorial boundaries.

■■ It is further argued here by plaintiffs that review of rates by the ICC is required in order to protect the rights of the Ferndale consumers because, unlike municipally owned utilities serving their own residents, plaintiff residents of Ferndale are unable to affect the decisions of the Palatine officials through the electoral process. We note, however, that the inability of the consumer to vote municipal officials in or out of office does not leave the consumer without a remedy, because the reasonableness of their rates is subject to judicial review. (*Conner v. City of Elmhurst* (1963), 28 Ill. 2d 221, 190 N.E.2d 760; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235; *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 405 N.E.2d 1256.) As the supreme court elaborated in *Springfield*:

> "Municipal officers under the Municipal Ownership act cannot discriminate in rates or make exorbitant and unjust rates to consumers if they discharge their duties faithfully, honestly and effi-

ciently under that act. All their rates and charges fixed by ordinances or resolutions are subject to review by the courts to a like extent as the rates fixed by the Public Utilities Commission for public utilities privately owned, although the matter of review may be had under a different law and by a different remedy." 292 Ill. 236, 253, 126 N.E. 739, 746, *aff'd* (1921), 257 U.S. 66, 66 L. Ed. 131, 42 S. Ct. 24.

■■ The courts are in agreement that municipalities selling water to nonresidents do so in their proprietary rather than their governmental capacity and, in so doing, are subject—as are privately owned utilities—to the rule that utility rates must not be unreasonable or discriminatory. (*Conner v. City of Elmhurst* (1963), 28 Ill. 2d 221, 190 N.E.2d 760; *Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 423 N.E.2d 1230; *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.) As stated in *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 94-95, 405 N.E.2d 1256, 1262:

> "When a municipal corporation owns and operates a water system for the purpose of selling water to consumers, it is acting in a business capacity and is generally to be treated as if it were a private utility company. [Citations.] * * * At common law, such an enterprise, because it had a monopoly on the service provided in the area, was prohibited from charging exorbitant rates and was required to serve all of its consumers without unreasonable discrimination in rates or manner of service. [Citations.] Today, private utility companies are prevented from charging exorbitant rates or from engaging in unreasonable discrimination in rates or manner of service by statute, and are no longer subject to the common law. [Citation.] Though there is no statute that prevents municipal corporations that operate public utilities from acting in an unreasonably discriminatory manner, there is still the common law duty that prevents them from doing so."

■■ We find unpersuasive plaintiffs' contention that Palatine should be subject to ICC jurisdiction because it was acting as a privately owned utility. It appears to us that in excluding municipally owned public utilities from ICC review, the language of the act in defining limitations on ICC jurisdiction leaves nothing to inference or judicial interpretation.

Moreover, it is not the function of the judiciary to legislate, and it is a rule in this State that the intention of the legislature must be ascertained primarily from the statute itself, and where its provisions are plain and unambiguous the courts should not read into it any exceptions or limitations which depart from its plain meaning—however desirable or beneficial they may be. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d

585.) If the General Assembly had intended to create an exception for utilities owned by a municipality but located and serving customers outside its corporate limits, it has not so stated, and we are without authority to do so in light of the plain and unambiguous provisions of the Act. Although we believe that such utilities should come within the authority of the ICC, we are of the opinion that any expansion of its jurisdiction to include municipally owned utilities beyond their corporate limits must come through the legislative process.

In this regard, we note that there are currently pending before the Illinois General Assembly related bills to amend section 11—117—4 of the Illinois Municipal Code of 1961 (Ill. Rev. Stat. 1979, ch. 24, par. 11—117—4)—one of which provides that ICC shall succeed the circuit courts in their authority to determine water rates for those consumers located outside the municipal limits of a municipality owning and operating a water plant providing such service (H.B. 2562, 82d Gen. Ass., 1982 Sess.), and the other provides that the ICC shall succeed to the courts upon the failure of consumers and the municipalities to reach a rate agreement (H.B. 2561, 82d Gen. Ass., 1982 Sess.).

The *amicus curiae* cites three cases from the courts of other jurisdictions which have held that municipally owned utilities serving customers outside their corporate limits are subject to State regulating agencies. However, those cases are inapposite to the present case since the courts there were interpreting statutes unlike the Illinois Public Utilities Act. In *Borough of Ambridge v. Pennsylvania Public Utility Com.* (1939), 137 Pa. Super. 50, 8 A.2d 429, the relevant statute specifically provided authority to the commission to regulate and control utility services rendered by a municipal corporation beyond its corporate limits; in *In re Complaint by Morris Township* (1967), 49 N.J. 194, 229 A.2d 516, there was no statute which expressly excluded the regulation of water rates by municipally owned utilities from the authority of the Board of Public Utility Commissioners; and in *City of Lamar v. Town of Wiley* (1926), 80 Colo. 18, 248 P. 1009, the statutory definition of public utility included private as well as municipal corporations which were engaged in serving the public with light and power.

For the reasons stated, we find that the ICC does not have jurisdiction over Palatine's acquisition of the Ferndale facilities or its proposed water rates to the former customers of Ferndale. Accordingly, we reverse the order directing Palatine to seek the approval of the Ferndale acquisition and the proposed water rates and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.