THE REGIONAL TRANSPORTATION AUTHORITY *et al.*, Plaintiffs-Appellees, *v.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants—(Suburban Transit System, Inc., Plaintiff-Appellee, *v.* The Regional Transportation Authority *et al.*, Defendants-Appellees—(The Illinois Commerce Commission, Defendant-Appellant)).

First District (3rd Division)   No. 81—1849

Opinion filed September 28, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and James E. Weging, Assistant Attorney General, of counsel), for appellant.

Jeffrey R. Ladd and Lawrence M. Gavin, both of Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago, for appellee Suburban Transit System, Inc.

James C. Munson, Roger L. Taylor, and Kathleen Kelly Spear, all of Kirkland & Ellis, of Chicago (Carl J. Frank, of Regional Transportation Authority, of counsel), for appellee Regional Transportation Authority.

JUSTICE RIZZI delivered the opinion of the court:

In two separate actions, plaintiff, Suburban Transit System, Inc. (Suburban), and plaintiffs the Regional Transportation Authority (RTA) and West Towns Bus Company (West Towns), sought injunctive and other relief as a result of the alleged attempts by defendants, the Illinois Commerce Commission (ICC) and its commissioners, to interfere with plaintiffs' operations. The cases were consolidated, and the court found that the ICC lacked jurisdiction over transportation agencies with RTA grant agreements and enjoined defendants "from proceeding any further with regards to the license of the bus companies involved or in any manner interfering with the operation, control and regulation of these bus companies." Defendants appeal. West Towns was allowed to withdraw from the appeal after the RTA purchased all of West Towns' operating rights and certain of its assets. We affirm.

In 1973, the Illinois General Assembly passed the RTA Act (Ill. Rev. Stat. 1975, ch. 111⅔, par. 701.01 *et seq.*), which provided for the

creation of the RTA as a single authority to provide and facilitate public transportation in the northeastern area of the State (Ill. Rev. Stat. 1975, ch. 111²/₃, par. 701.02(b)). The RTA is empowered to provide public transportation by purchasing service from transportation agencies through purchase of service agreements, by grants to transportation agencies or by operating transportation service itself. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 702.01(a).) Both Suburban and West Towns operated bus service with grant contracts from the RTA. Suburban and West Towns also held certificates of public convenience and necessity which had been issued by the ICC.

In 1981, as a result of the RTA's inability to meet all of its financial obligations, Suburban and West Towns discontinued bus service. The ICC issued citation orders against both companies directing them to appear before the ICC and show cause why their certificates should not be revoked and penalties imposed for their failure to provide and maintain adequate and effective bus service. Prior to the issuance of the citation order against West Towns, the RTA and West Towns filed a complaint against defendants for injunctive and other relief, alleging that the ICC had threatened to revoke the licenses of West Towns and other bus companies. Suburban, after receiving the citation order, filed its complaint against the RTA and the ICC for declaratory judgment, injunction and other relief, and it obtained a temporary restraining order which prevented the ICC from taking action to revoke its certificate. Plaintiffs' suits were consolidated on the basis of the common threshold question  of the ICC's jurisdiction over Suburban and West Towns. The court resolved the jurisdictional issue in favor of plaintiffs and ordered injunctive relief.

■ Initially, defendants assert that the record does not support the court's findings that the ICC attempted to exercise jurisdiction over RTA contracts. Defendants maintain that in their answer they denied any interference with or interest in RTA contracts or their terms and that the issues raised in the citation orders against Suburban and West Towns strictly involved violations of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 1 et seq.). We find no merit in this argument.

First, we note that the court did not make a specific finding that the ICC attempted to exercise jurisdiction over the RTA contracts. Moreover, as the court noted, whether the ICC has jurisdiction here is a question of law involving statutory interpretation. Therefore, a factual determination that defendants had attempted to exercise jurisdiction is not necessary to support either the conclusion that the ICC lacked jurisdiction over Suburban, West Towns or their RTA grant

contracts, or the order of injunctive relief. Finally, even if the citation orders issued by the ICC against Suburban and West Towns involved violations of the Public Utilities Act, the question here is whether that act and the RTA Act prevent the ICC from proceeding against the bus companies regardless of the nature of the violation. Thus, we believe that the court's findings and conclusions are wholly supported by the record.

■■ The central issue here is whether the ICC has jurisdiction over bus companies which have grant contracts with the RTA. Defendants contend that the ICC has jurisdiction on the basis of certain provisions of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 1 et seq.) and the RTA Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 701.01 et seq.), the legislative history of section 10b of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 10b), and prior administrative practice.

The Public Utilities Act provides for the general supervision of all public utilities by the ICC. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 8.) However, "public utilities" do not include "such public utilities which are engaged in the transportation of persons by motor bus to the extent that the transportation is conducted pursuant to a valid and subsisting contract with a political subdivision or a municipal corporation in this State ***." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 10.3(5).) The RTA is a political subdivision and municipal corporation. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 701.04.) There is no dispute that Suburban and West Towns were bus companies which had valid grant contracts with the RTA. We conclude, therefore, that as long as the grant contracts were in effect, Suburban and West Towns were not subject to ICC jurisdiction because they were not public utilities within the meaning of the Public Utilities Act. Cf. Regional Transportation Authority v. Burlington Northern Inc. (1981), 100 Ill. App. 3d 779, 782-83, 426 N.E.2d 1143, 1145-46 (where the court noted that under sections 2.04 and 2.06 of the RTA Act (Ill. Rev. Stat. 1981, ch. 111²/₃, pars. 702.04, 702.06), if some contractual relationship between the RTA and the Burlington was still in effect, the ICC had no jurisdiction to determine fares to be charged by Burlington and Burlington had no authority to charge fares not specifically approved by the RTA).

Defendants contend that the better reading of section 10.3(5) is that it applies only to direct RTA operation of motor bus transportation. We find defendants' interpretation contrary to the express wording of the statute, which plainly applies to all bus transportation conducted pursuant to valid and subsisting contracts with political

subdivisions or municipal corporations such as the RTA. Defendants also contend that the certificates of public convenience and necessity held by Suburban, West Towns and other companies with RTA grant contracts override any exemption and create at least concurrent jurisdiction in the ICC and the RTA. We believe, however, that the statute clearly provides that while valid contracts are in effect between companies providing bus transportation and the RTA, the ICC has no jurisdiction. Under the statute, if no valid contracts exist, such companies may become, by definition, public utilities subject to ICC jurisdiction.

■ Defendants assert that if the ICC lacks jurisdiction over Suburban and West Towns, we must order the ICC to cancel the certificates of public convenience and necessity which it issued to Suburban and West Towns. We decline to do so. Neither the Public Utilities Act nor the RTA Act provides that certificates issued by the ICC become void when a transportation agency enters into a contract with the RTA. We do not believe that the legislature intended such a result. Rather, both the Public Utilities Act and the RTA Act indicate that the RTA has sole jurisdiction over the companies with which it has a contractual relationship, but if the contractual relationship ends, jurisdiction reverts to the ICC. In this way, companies remain subject to the regulatory control of either the RTA or the ICC at all times.

We find support for our view of the legislative scheme in the stated purpose of the RTA Act which is

"to provide for, aid and assist public transportation in the northeastern area of the State *** by providing for the creation of a *single* authority *** with the power and competence to provide and facilitate public transportation which is attractive and economical to users, comprehensive, coordinated among its various elements, economical, safe, efficient and coordinated with area and State plans." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111⅔, par. 701.02(b).)

We believe that the legislature intended to provide for the creation of the RTA as a strong agency, with control over its own contracts, which would cooperate with, but not be dominated by, the ICC.

We find further support for our view of the legislative scheme in some of the other provisions of the Public Utilities Act and the RTA Act. Section 2.06 of the RTA Act removes the RTA from the purview of the Public Utilities Act and provides, *inter alia*, that

"[t]ransportation agencies which have any purchase of service agreement with the [RTA] shall not be subject to that [Public Utilities] Act as to any public transportation which is the sub-

ject of such agreement. No contract or agreement entered into by any transportation agency with the [RTA] shall be subject to approval of or regulation by the Illinois Commerce Commission." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 702.06(c).)

This section parallels section 10b of the Public Utilities Act, which was amended upon passage of the RTA Act to require that the ICC cooperate with the RTA, and which provides, *inter alia*:

"Transportation Agencies which have any purchase of service agreement with the [RTA] as provided in the '[RTA] Act' shall not be subject to this [Public Utilities] Act as to any public transportation which is the subject of such agreement. ***

No contract between any Transportation Agency and the [RTA] *** shall, except as provided in such [RTA] Act, be subject to the supervision, regulation or approval of the [ICC] ***." Ill. Rev. Stat. 1981, ch. 111²/₃, par. 10b.

Thus, both Acts exempt RTA contracts with transportation agencies from ICC jurisdiction.

Defendants, however, point out that the RTA Act distinguishes three methods of RTA subsidization of public transportation: purchase of service agreements, grant contracts and direct operation. Defendants then assert that both acts specifically exempt purchase of service agreements but not subsidy grants or other RTA contracts from ICC jurisdiction. Thus, defendants argue, "[t]he very fact that within the same section of the RTA Act *** the General Assembly exempted all contracts from [ICC] approval but exempted only public utilities holding purchase of service agreements from [ICC] jurisdiction indicates the General Assembly did not intend to exempt public utilities holding other types of RTA agreements from [ICC] jurisdiction." Defendants also maintain that a broad reading of the contracts exemption renders superfluous the specific language regarding purchase of service agreements. We find no merit in defendants' argument.

First, we believe that there is no basis for making the distinction, which is implicit in defendants' argument, between ICC jurisdiction and ICC approval, regulation, or supervision. Further, we find that the Acts, read together, unambiguously remove all RTA contracts from ICC jurisdiction. Moreover, we believe that separate mention of purchase of service agreements is understandable in light of the statutory requirements for purchase of service agreements which explicitly provide for a certain amount of ICC involvement under specified circumstances. See Ill. Rev. Stat. 1981, ch. 111²/₃, par. 702.02(c).

Defendants point to parts of section 10b of the Public Utilities Act

(Ill. Rev. Stat. 1981, ch. 111⅔, par. 10b) and section 2.06 of the RTA Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 702.06) which, they contend, reserve ICC jurisdiction in the event of discontinuations of service where RTA grant contracts are involved. Section 2.06 of the RTA Act provides, *inter alia*, that

"[i]f the [RTA] Board shall determine that any particular public transportation service provided by a transportation agency with which the [RTA] has a purchase of service agreement is not necessary for the public interest and shall, for that reason, decline to enter into any purchase of service agreement for such particular service, then the [RTA] shall have no obligation pursuant to Section 2.02(c) to offer or make a purchase of service agreement with respect to that particular service and the transportation agency may discontinue the particular service. Such discontinuation shall not be subject to the approval of or regulation by the [ICC]." (Ill. Rev. Stat. 1981, ch. 111⅔, par. 702.06(c).)

A parallel provision in section 10b of the Public Utilities Act states that when the determination has been made that the transportation service provided by an agency with a purchase of service agreement is not necessary, and the RTA has declined to enter into a purchase of service agreement pursuant to the RTA Act, "the discontinuation of such service by such Transportation Agency shall not be subject to the supervision, regulation or approval of the [ICC]." (Ill. Rev. Stat. 1981, ch. 111⅔, par. 10b.) On the basis of these parallel provisions, defendants, relying on the rule *expressio unius est exclusio alterius*, maintain that the only time the ICC does not have jurisdiction over a discontinuation of service is when an RTA purchase of service agreement is involved. Thus, defendants argue that the ICC has jurisdiction where, as here, a transportation agency with an RTA grant contract discontinues service. We disagree.

In both the Public Utilities Act and the RTA Act the specific language regarding the discontinuation of service by transportation agencies with purchase of service agreements is preceded by broad language exempting any RTA contract with a transportation agency from ICC jurisdiction. We do not believe that the specific language regarding transportation agencies with purchase of service agreements was meant to single out those agencies as the only ones exempt from ICC jurisdiction. Rather, we believe that this language was necessary in light of the role the ICC plays when purchase of service agreements are involved under the circumstances specified in section 2.02 of the RTA Act. (See Ill. Rev. Stat. 1981, ch. 111⅔, par. 702.02(c).)

Thus, we conclude that the Acts preclude ICC jurisdiction over discontinuations of service by transportation agencies with RTA grant contracts.

■ Defendants point to an additional section of the RTA Act which they contend reflects a legislative intent to reserve ICC jurisdiction over agencies with RTA grant agreements. Section 2.04 of the RTA Act, which concerns fares and nature of service, provides:

"Whenever the [RTA] provides any public transportation pursuant to grants made after June 30, 1975, to transportation agencies for operating expenses (other than with regard to experimental programs) or pursuant to any purchase of service agreement, the purchase of service agreement or grant contract shall provide for the level and nature of fares or charges to be made for such services, and the nature and standards of public transportation to be so provided. *** In the case of a grant to a transportation agency which remains subject to [ICC] supervision and regulation, the [RTA] shall exercise the powers set forth in this Section in a manner consistent with such supervision and regulation by the [ICC]." (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 702.04.)

Defendants maintain that this section of the RTA Act states that transportation agencies are still subject to ICC jurisdiction when they hold RTA grants. We disagree.

We believe that the legislative scheme here leaves room for transportation agencies which have operations funded with RTA grants as well as operations which are not funded with RTA grants. Plainly, a transportation agency would remain subject to ICC supervision and regulation of any operations which are not funded with RTA grants. Thus, we believe that in order to avoid inconsistencies in fares and nature of service within transportation agencies which have both types of operations, section 2.04 of the RTA Act simply directs that fares and nature of service for the operations funded with RTA grants be consistent with ICC requirements.

Next, defendants argue that the legislative history of section 10b of the Public Utilities Act supports their contention that the ICC has jurisdiction here. However, in view of the plain language of both Acts exempting transportation agencies with RTA grant contracts from ICC jurisdiction, we find it unnecessary and irrelevant to compare section 10b of the Public Utilities Act as originally presented to the General Assembly with section 10b as actually enacted.

■ Finally, defendants argue that prior consistent administrative practice indicates that the ICC has jurisdiction here. Defendants con-

tend that applications and petitions by Suburban and West Towns and correspondence initiated by the RTA evidence plaintiffs' recognition of the ICC's jurisdiction over Suburban and West Towns. In addition, defendants maintain that the court erred in refusing to receive into evidence documents which defendants assert would prove the prior consistent administrative practice. We find no merit in defendants' arguments.

The ICC derives its power and authority solely from the statute creating it. (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 217-18, 402 N.E.2d 595, 597.) The ICC is without power to extend its jurisdiction as that is within the prerogative of the legislature. (*Inland Real Estate Corp. v. Village of Palatine* (1982), 107 Ill. App. 3d 279, 281, 437 N.E.2d 883, 885.) Thus, if the applicable statutes exempt transportation agencies with RTA grant contracts from ICC jurisdiction, ICC jurisdiction over such agencies could not be extended by administrative acts or practices. We therefore conclude that prior administrative practice is irrelevant to the issue of ICC jurisdiction in this case and that the court did not need to consider any documents purporting to prove prior administrative practice.

In conclusion, we find, on the basis of the Public Utilities Act and the RTA Act, that the ICC lacked jurisdiction over Suburban and West Towns.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and WHITE, J., concur.