INLAND REAL ESTATE CORPORATION *et al.*, Appellants and Cross-Appellees, v. THE VILLAGE OF PALATINE *et al.*, Appellees and Cross-Appellants.

First District (5th Division)   Nos. 84—2536, 84—2866 cons.

Opinion filed June 6, 1986.—Rehearing denied August 15, 1986.

Edward G. Finnegan, Ltd., of Chicago for appellants.

Bradley Glass, of Northbrook, and Gerald W. Shea, Ira A. Rogal, and Jeffrey I. Kleifield, all of Shea, Rogal & Associates, of Chicago, for appellee Village of Palatine.

Chapman & Cutler, of Chicago (Raymond A. Fylstra, of counsel), for appellee Ferndale Heights Utilities Company.

JUSTICE PINCHAM delivered the opinion of the court:

Defendant Ferndale Heights Utility Company (Ferndale) was a privately owned and operated utility company until the village of Palatine (Palatine) purchased it in 1981. Thereafter, plaintiffs, former customers of Ferndale, brought this class action to challenge the rates for water, sewer, tap-on and meter services set by Palatine after the purchase. The trial court found, *inter alia*, that the water rate of $6.23 per 1,000 gallons set by Palatine was unreasonable and discriminated against plaintiffs and set a water rate of $3.45 per 1,000 gallons.

In this appeal, plaintiffs contend that (1) the water rate set by the trial court was unreasonable, unjust, and excessive; (2) the trial court erroneously gave the water rate set by Palatine a presumption of validity; (3) the trial court's failure to set a combined water and sewer rate was inconsistent with its findings; (4) the trial court's failure to make specific findings or to set forth the formula it applied in setting the $3.45 rate did not satisfy the court's statutory obligation; (5) the trial court erroneously found that plaintiffs failed to establish that they were assignees of the developers' contracts with Ferndale; (6) Palatine was bound by all the developers' contracts with Ferndale; (7) Palatine assumed Ferndale's contractual obligations when Palatine purchased Ferndale; (8) the trial court erroneously found that plaintiffs failed to establish that Palatine's rates for meters, water tap-ons, and sewer connections were excessive; (9) the trial court should have set retroactive and prospective rates; (10) plaintiffs were entitled to interest.

In its cross-appeal, Palatine claims that (1) the allocation of 12.18% of the cost of the internal improvements to former Ferndale customers was too low; (2) the former Ferndale customers should be assessed the purchase price paid by Palatine for the utility company; (3) errors in computations resulted in a water rate which is too low; and (4) the motives of Palatine's trustees are irrelevant.

In a separate cross-appeal, Ferndale asserts that plaintiffs had no contractual right to any particular utility rate and that plaintiffs failed to prove that Ferndale breached its contractual obligations regarding

the rates for water, sewer, meter and tap-on services.

During the six-month trial, 26 witnesses testified and over 3,500 pages of transcript were compiled. We shall summarize the evidence presented.

Ferndale was located in an unincorporated area adjacent to Palatine. It was owned and operated by Ray DeVito from 1958 until February 1981, when he sold it to Palatine for $4,282 million although it had a purported value of $10 million. Prior to the sale, Ferndale served 3,000 metered residential and commercial customers at a water rate of $1.57 per 1,000 gallons from a system of wells located in the unincorporated area. Palatine purchased Ferndale to control the development of the unincorporated area. After the sale, Palatine set a water rate of $1.98 per 1,000 gallons for nonresidents of Palatine, including former Ferndale customers. This was twice the rate of $0.99 per 1,000 gallons Palatine charged residents of the village.

In response to the water rate set by Palatine for nonresidents, plaintiffs filed an action for injunctive relief. The circuit court entered a temporary restraining order prohibiting Palatine from charging nonresidents a rate in excess of the Illinois Commerce Commission approved rate of $1.57 per 1,000 gallons and directed Palatine to file applications with the Commission for approval of its acquisition of Ferndale and its proposed water rates. Palatine filed an interlocutory appeal under Supreme Court Rule 308 (87 Ill. 2d R. 308) which sought to reverse the trial court's order. We reversed and remanded that order and held that the Illinois Commerce Commission did not have jurisdiction over Palatine's acquisition of Ferndale or Palatine's water rates to former Ferndale customers. *Inland Real Estate Corp. v. Village of Palatine* (1982), 107 Ill. App. 3d 279, 284, 437 N.E.2d 883.

Prior to its purchase of Ferndale, Palatine had embarked upon a plan to improve its water distribution system. After the purchase, Palatine joined the villages of Arlington Heights, Wheeling, and Buffalo Grove in the formation of the Northwest Water Commission to construct a pipeline and other facilities to provide water from Lake Michigan to the area.

Palatine retained the engineering firm of Stanley Consultants, Inc. of Iowa (Stanley Consultants) to design a system for water improvements, utilizing Lake Michigan, and a methodology to allocate costs for the improvements between the incorporated and unincorporated areas served by Palatine that would meet customer needs in the year 2010. In July 1981, Stanley Consultants presented a report to Palatine which concluded that cost allocations should be 59% for Palatine and 41% for nonresidents. Based on that report, on October 26,

1981, Palatine enacted an ordinance setting water rates for nonresidents at $6.23 per 1,000 gallons and for residents at $3.38 per 1,000 gallons.

Palatine submitted an advisory referendum to its electorate to determine whether they preferred to pay the costs of constructing the improved pipeline water distribution system through an increase in water rates or in real estate taxes. Palatine, consistent with the results of the referendum, reduced its resident water rate back to $0.99 per 1,000 gallons and imposed a corresponding increase in the real estate tax levy.

Palatine financed the water improvement system and its obligation to the Northwest Water Commission for its share of the pipeline costs through four separate bond issues that had varying maturity rates and debt service schedules.

PLAINTIFFS' CASE

According to the testimony of renters, owners, managers, and developers of property in the area formerly serviced by Ferndale, as a result of Palatine's $6.23 water rate, rents increased, services declined, strict conservation was required, the appearance of the community was affected, costs of housing was not longer competitive, and the availability of subsidized housing was imperiled.

James Muldowney, an engineer and president of a firm that had provided engineering services for Ferndale and for housing developments in the Ferndale service area testified that according to the study conducted by him, the costs for improvement of the water system should have been allocated 12% to former Ferndale customers and 88% to Palatine. Muldowney's study area was one-fourth the size of that used by Stanley Consultants and consisted of the area that was formerly serviced by Ferndale. Muldowney added that the allocation of operation and maintenance costs should have been determined on the basis of the percentage that the segment bore to the total allocation area serviced. He added that there would be an annual increase in costs based on the allocation of Lake Michigan water from the State and Northwest Water Commission agreement. Water rates for municipalities, he also testified, should be based on budgetary considerations such as the costs of capital, operations, maintenance, depreciation, replacement of the facility and improvements to the system. Also, ideally, municipalities should not operate utilities for profit, but municipalities should operate utilities to cover costs.

Michael Malter, an accountant, testified that he was retained by plaintiffs to study Palatine's water rates for former Ferndale cus-

tomers. According to Malter, based on the percentage spread compiled by Muldowney concerning the allocation of system improvements, Ferndale customers should have paid $1.80 per 1,000 gallons for fiscal year ending 1983, $1.62 per 1,000 gallons for fiscal year ending 1984, and $2.51 per 1,000 gallons for fiscal year ending 1985. In arriving at these rates, Malter relied upon Palatine bond issues beginning in 1981, with respect to funds used by the village in connection with the water-sewer system, a prospectus issued by the Northwest Water Commission in connection with the sale of revenue bonds for a share of the pipeline construction costs for Evanston, Palatine audit reports, and other accounting information. His calculations were based on water actually delivered and not water pumped.

Malter added that privately owned utility companies should be allowed to make a profit, but that water rates charged by a municipality should be sufficient to cover costs and to provide good service, and that municipalities should be allowed to profit when it is reasonably within the parameters of necessary financial viability.

Larry Van Ruler, a utility accountant specialist, testified that the $6.23 per 1,000 gallons water rate set by Palatine for nonresidents was too high.

DEFENDANTS' CASE

George M. Wadlow, an engineer employed by Stanley Consultants, testified that the engineering firm was hired by Palatine to evaluate the existing water system, to develop a plan for eventually converting the water supply system and to make other improvements in the water distribution system. According to Wadlow, the costs of improvement of the water distribution system should have been allocated 41% to the unincorporated area and 59% to Palatine. His analysis was based on the average daily demands, fire demands, peak demands, and anticipated future demands of water.

According to Richard Pavia, an engineer, based on the information Palatine relied upon, the water rate set for nonresidents of $6.23 per 1,000 gallons was fair and equitable.

The trial court found, *inter alia*, that the nonresident water rate set by Palatine was unjustly discriminatory; that although plaintiffs were assignees of contracts between contractors and Ferndale, there was no guarantee that the water rates would remain the same; that it was not unjustly discriminatory for nonresidents to pay different rates than residents of a municipality; that a municipality may earn a profit on its operation of water system; and that Palatine could impose tap-on and meter fees for water and sewers in the unincorpo-

rated area.

Before addressing the merits of plaintiffs' appeal, we find it necessary to discuss plaintiffs' brief. While plaintiffs have presented several issues for review, they have cited authority to substantiate only some of their contentions. A reviewing court is entitled to have the issues clearly defined with supporting authority cited and it is not a depository in which a litigant may leave the burden of argument and research. (*Bank of Ravenswood v. Maiorella* (1982), 104 Ill. App. 3d 1072, 1074, 433 N.E.2d 1044.) A reviewing court must render its decision based on legal precedent, and when a party fails to support his contentions by reference to authority, he contributes to the possibility that the court's decision might not be in full accord with the law. (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 969, 418 N.E.2d 56.) Under such circumstances, the reviewing court may deem those issues waived which have not been sufficiently or properly presented. (*Consultants & Administrators, Inc. v. Department of Insurance* (1982), 103 Ill. App. 3d 920, 924, 431 N.E.2d 1306.) However, a reviewing court may override considerations of waiver. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 608-09, 456 N.E.2d 958.

■■■ Thus, we shall address plaintiffs' contention that the water rate set by the trial court of $3.45 per 1,000 gallons for nonresidents of Palatine was unreasonable, unjust and excessive. Although municipality-owned utility systems are self-regulating, their rates are subject to review by the court. (*Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 253, 126 N.E. 739.) Municipalities selling water to nonresidents do so in a proprietary capacity. (*Wagner v. City of Rock Island* (1893), 146 Ill. 139, 154; *Inland Real Estate Corp. v. Village of Palatine* (1982), 107 Ill. App. 3d 279, 283, 437 N.E.2d 883.) Although municipalities are specifically excluded from regulation as a "public utility" (Ill. Rev. Stat. 1983, ch. 111$\frac{2}{3}$, par. 10.3(1)), municipalities are required by common law to serve their customers without unreasonable discrimination in rates or service. (*Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 261, 423 N.E.2d 1230; *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 95, 405 N.E.2d 1256.) Notwithstanding, municipalities are not prohibited from realizing a reasonable revenue surplus or profit from their operation of a utility system. *Wagner v. City of Rock Island* (1893), 146 Ill. 139, 155-57.

■■ The municipalities' rates must be, to a certain extent, uniform and equitable for the same amount and character of service. (*Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236,

252-53, 126 N.E. 739.) Where the difference in rates is reasonably related to a difference in costs of providing services, discrimination in rates is not unreasonable. (*Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 99, 465 N.E.2d 1256.) The trial court's determination will not be disturbed absent a finding that the trial court's judgment was clearly against the manifest weight of the evidence. *V & V Cement Contractors, Inc. v. La Salle National Bank* (1983), 119 Ill. App. 3d 154, 157, 456 N.E.2d 655.

■■ ■ A presumption of validity is accorded rates enacted by municipal ordinance and plaintiffs bear a heavy burden of proving that the rates charged are unjustly discriminatory and unreasonable. (See *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.) Once sufficient evidence is introduced to challenge the validity of the presumption, the presumption becomes inoperative. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 463, 448 N.E.2d 872.) Here, the trial court properly afforded Palatine's water rate ordinance a presumption of validity because it was duly enacted by its trustees. However, after considering the evidence presented, the trial court found that the rate set unjustly discriminated against nonresidents. The trial court reduced Palatine's water rate for nonresidents to $3.45 per 1,000 gallons which was slightly higher than the rate of $3.38 per 1,000 gallons Palatine charges its residents. This rate set by the trial court was sufficient to provide for the debt service on the revenue bonds issued by Palatine for the water system, depreciation, and the operation and maintenance costs as required by statute. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 1 *et seq.*) Under the circumstances, we cannot conclude that the decision of the trial court was improper.

Plaintiffs further contend that the trial court failed to set a combined water and sewer rate and failed to establish tap-on and meter charges. When defendants presented their case in the trial court, plaintiffs obtained leave to amend their complaint and alleged that Palatine's rate for sewer services for nonresidents was unreasonable and arbitrary. Additionally, plaintiffs' complaint asserted that Palatine's rates for water tap-on and meter service were unreasonable and arbitrary. However, the trial court did not decide plaintiffs' contentions concerning Palatine's rates for sewers, tap-ons and meter services. Therefore, this cause must be remanded for a resolution of these issues.

■■■ Plaintiffs also maintain that when Palatine purchased Ferndale, Palatine assumed Ferndale's contractual obligations and that plaintiffs were assignees of the contracts Ferndale had entered

into with certain developers. An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee. (*City of Chicago Heights v. Old Orchard Bank & Trust Co.* (1981), 96 Ill. App. 3d 789, 793, 422 N.E.2d 69.) It is well established that to constitute a valid assignment, no particular form of words is necessary. (*Smith v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725, 727, 462 N.E.2d 298.) Assignments are void unless the assignor has either actually or potentially the thing which he attempts to assign. (*Litwin v. Timbercrest Estates, Inc.* (1976), 37 Ill. App. 3d 956, 958, 347 N.E.2d 378.) In any event, an assignee can obtain no greater right or interest than that possessed by the assignor inasmuch as he cannot convey that which he does not have. (*Buck v. Illinois National Bank Trust Co.* (1967), 79 Ill. App. 2d 101, 106, 223 N.E.2d 167.) The creation and existence of an assignment is to be determined according to the intentions of the parties, which is a question of fact to be derived not only from the instruments by them, but from the surrounding circumstances as well. *Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 642, 325 N.E.2d 357.

■■■ In the instant cause, plaintiffs suggest that by purchasing Ferndale, Palatine assumed its obligation including that of accepting the jurisdiction of the Illinois Commerce Commission with regard to establishing water rates. This contention is without merit. Municipally owned public utilities are excluded from Commission review by statute (Ill. Rev. Stat. 1983, ch. 111⅔, par. 10.3(1)). Further, the option agreement between Palatine and Ray DeVito for the purchase of Ferndale expressly stated that Ferndale had no contracts or obligations which would impair Palatine from setting water or sewer rates. Also, the only executory contracts Ferndale had at the time of the sale were attached to the agreement and involved providing water and sewer services for developments that were in various stages of completion. These contracts did not bind Palatine, as the purchaser of Ferndale, to any particular water rate or rate setting procedure.

Plaintiffs assert that they are entitled to interest, that the trial court should have set retroactive and prospective water rates, and that the trial court was required to set forth the formula it applied in setting the water rate of $3.45. Plaintiffs have cited no authority to support these contentions and failed to preserve them for review by including them in their post-trial motion. Under these circumstances, plaintiffs have waived these issues for review. 87 Ill. 2d R. 341(d); *Watson v. City of Chicago* (1984), 124 Ill. App. 3d 348, 354, 464 N.E.2d 1100.

We also note that the claims presented in defendants' cross-appeals essentially challenge the reasonableness of the water rate set by the trial court. Because of our disposition of that issue, we need not consider the contentions raised in the cross-appeals.

Accordingly, the judgment of the circuit court of Cook County is affirmed, but the matter is remanded for further proceedings consistent with the foregoing.

Affirmed.

SULLIVAN, P.J., and QUINLAN, J., concur.